UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 18-04549-hb |
| | ) | |
| James Edwin Ollis | ) | Chapter 12 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## OBJECTION TO PLAN

NOW COMES, by and through its undersigned counsel, John Deere Financial ("JDF"), and objects to confirmation of the Debtor's Chapter 12 Plan filed on December 3, 2018 (Docket No. 79, the "Plan") for the reasons set forth below.

1.     JDF holds a total of four claims (collectively, the "Claims") against the Debtor, which were timely filed as Claim Nos. 27 through 30 on the Court's Claims Register.  Copies of the Claims are attached hereto as Exhibits A through D, respectively.

2.     Claim No. 27 is a claim in the prepetition amount of not less than $8,932.06 secured by a purchase-money security interest in a John Deere 630 Side-Pull Rotary Mower Conditioner (the "Mower Collateral") having an estimated current value of $15,040.00.  As such, Claim No. 27 is oversecured.

3.     Claim No. 28 is a claim in the prepetition amount of not less than $15,167.27 secured by a purchase-money security interest in a John Deere 6320 Utility Cab Tractor (the "Tractor Collateral" and together with the Mower Collateral, the "Collateral") having an estimated current value of $16,768.00.  As such, Claim No. 28 is oversecured.

4.     Claim No. 29 is an unsecured claim in the prepetition amount of not less than $45,515.55 on which the Debtor is jointly liable with non-debtor J. Ollis Farms, LLC.

5.     Claim No. 30 is a claim in the prepetition amount of not less than $41,644.69. Pursuant to a cross-collateralization provision, Claim No. 30 is secured by any remaining equity

1

in the Collateral.

6.    On September 4, 2018, the Debtor filed a petition for relief under Chapter 12 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").[1]

7.    On December 3, 2018, the Debtor filed the Plan, which proposes to treat JDF's Claims as follows:

    a.    Claim No. 27 is to be paid as fully secured with monthly payments of $148.87 per month for 60 months with 0% interest;

    b.    Claim No. 28 is to be paid as fully secured with monthly payments of $252.79 per month for 60 months with 0% interest;

    c.    Claim No. 30 is treated as secured for $0.00, thus rendering the claim as unsecured; and

    d.    Claim No. 29 is unsecured.

## ARGUMENT

JDF objects to confirmation of the plan for three reasons:  First, because Claim Nos. 27 and 28 are oversecured, those claims are entitled to postpetition interest and attorneys' fees pursuant to § 506(b).  Second, because there is approximately $7,700 in equity remaining in the Collateral above Claim Nos. 27 and 28, Claim No. 30 should be treated as partially secured for the remaining equity.  Third, in refusing to pay postconfirmation interest on any of JDF's secured Claims, the Plan does not provide JDF with the secured Claims' value as of the date of confirmation as required under § 1225(a)(5)(B)(ii).

A.    JDF is Entitled to Postpetition Interest and Attorneys' Fees under § 506(b).

While postpetition interest, fees, and other charges are generally not allowed as part of a secured claim, § 506(b) sets forth an exception where the claim is "oversecured" because the value of the collateral exceeds the amount of the claim.  Section 506(b) "allows an oversecured

---

[1] Further reference to the Bankruptcy Code are by section number only.

creditor to recover post-petition interest as part of its allowed claim at the contract rate until the effective date of the plan." *In re Sanders*, 521 B.R. 739, 742 (Bankr. D.S.C. 2014). Here, while the contract rate for Claim No. 27 is 0%, the rate for Claim No. 28 is 3.45%, and therefore JDF is entitled to preconfirmation interest at that rate.

In addition to preconfirmation interest, § 506(b) provides for an oversecured creditor to recover its attorneys' fees. See *In re Gregg*, 528 B.R. 645, 654 (Bankr. D.S.C. 2014). As an oversecured creditor in this case, JDF is entitled to recover its reasonable attorneys' fees incurred in this case, with such fees included in the secured amount of Claim No. 27 and/or 28. Because the Plan provides for neither preconfirmation interest nor postpetition attorneys' fees, JDF is not receiving the full secured value of Claim Nos. 27 and 28.

B.    Claim No. 30 Should be Treated as Partially Secured.

While Claim No. 30 was filed as partially secured in the amount of $7,708.70, which represents the remaining equity in the Collateral after accounting for the prepetition amounts due under Claim Nos. 27 and 28, the Plan proposes to value the secured portion of Claim No. 30 at $0.00, thus rendering Claim No. 30 fully unsecured. While JDF acknowledges that the secured amount of Claim No. 30 should be reduced by additions to Claim Nos. 27 and/or 28 as a result of postpetition interest and/or attorneys' fees, based upon the value of the Collateral, there remains an amount that partially secures Claim No. 30, and Claim No. 30 should be treated as partially secured for that amount.

C.    All Secured Claims Should be Paid Post-Confirmation Interest.

Section 1225(a)(5) provides that in order for a chapter 12 plan to be confirmed in the absence of a secured creditor's acceptance of the plan's terms or surrender of the creditor's collateral, the debtor must show that the creditor will receive property, usually in payments, with

3

a value that is equal to the amount of the creditor's allowed secured claim on the effective date of the plan. 11 U.S.C. § 1225(a)(5)(B)(ii). The language used in § 1225(a)(5)(B)(ii) substantially mirrors that used in the analogous Chapter 13 plan confirmation section, 1325(a)(5)(B)(ii). In the Chapter 13 context, this requirement that a creditor receive "the value, as of the effective date of the plan … not less than the allowed amount of such claim" has been interpreted by the United States Supreme Court to require that interest at the prime rate plus a risk premium "must be applied under § 1325(a)(5)(B) to ensure the property to be distributed to a particular creditor over the life of a bankruptcy has a total value, as of the effective date of the plan that equals or exceeds the value of the creditor's secured claim." *In re Sanders*, 521 B.R. at 744 (interpreting *Till v. SCS Credit Corp.*, 541 U.S. 465, 474, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004)). While *Till* involved a Chapter 13 case, given the similarities between §§ 1225(a)(5)(B)(ii) and 1325(a)(5)(B)(ii), there is no reason that *Till* should not apply in Chapter 12. See, *e.g.*, *In re Terry Props., LLC*, 569 B.R. 76, 88 (Bankr. W.D. Va. 2017) (applying *Till* in Chapter 12 case). Here, the Debtor's proposed plan does not provide for any postconfirmation interest on JDF's secured claims, therefore does not comply with § 1225(a)(5)(B)(ii), and as a result cannot be confirmed.

## CONCLUSION

For the reasons stated above, the Debtor's Plan does not comply with the requirements of the Bankruptcy Code necessary for confirmation. As such, JDF requests that confirmation be denied unless the above-detailed issues are corrected.

CHARLESTON\737354v1

Respectfully submitted,

/s/ Reid E. Dyer
Reid E. Dyer, USDC No. 10723
MOORE & VAN ALLEN PLLC
78 Wentworth Street (29401)
Post Office Box 22828
Charleston, SC  29413-2828
(843) 579-7000
(843) 579-7099 facsimile
reiddyer@mvalaw.com

ATTORNEYS FOR JOHN DEERE FINANCIAL

CHARLESTON, SC
December 27, 2018

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 18-04549-hb |
| | ) | |
| James Edwin Ollis | ) | Chapter 12 |
| | ) | |
| Debtor. | ) | |
| | ) | |

The undersigned hereby certifies that on December 27, 2018, copies of the foregoing Objection to Plan were served via the Court's CM/ECF system to all parties registered to receive such notice and by depositing a copy of the same in the United States Mail to the parties as indicated below:

James Edwin Ollis
2450 Garden Road
Ware Shoals, SC 29692
*Via USPS*

Alecia Tate Compton
Attorney for Debtor
*Via CM/ECF*

J. Kershaw Spong
Robinson Gray Stepp & Laffitte, LLC
PO Box 11449
Columbia, SC 29211
*Via CM/ECF & USPS*

U. S. Trustee's Office
*Via CM/ECF*

/s/Reid E. Dyer
Reid E. Dyer

6

# EXHIBIT A

**Fill in this information to identify the case:**

Debtor 1    James Edwin Ollis

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  District of South Carolina

Case number   18-04549-hb

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to **11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

## Part 1:    Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Deere & Company<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes.  From whom? _____ |
| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Reid E. Dyer<br>Name<br><br>78 Wentworth Street<br>Number        Street<br><br>Charleston          SC          29401<br>City                    State            ZIP Code<br><br>Contact phone  843-579-7000<br><br>Contact email  reiddyer@mvalaw.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br>Number        Street<br><br>City                    State            ZIP Code<br><br>Contact phone _____<br><br>Contact email _____ |
| 4. **Does this claim amend one already filed?** | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____    Filed on ___/___/_____<br>                                                                              MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

**6.  Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  3  9  0  0

**7.  How much is the claim?**   $_____15,167.24 .  **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.  What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_money loaned_

**9.  Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:   _6320 Utility Cab Tractor_

**Basis for perfection:**   _UCC financing statement_

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $   16,768.00

**Amount of the claim that is secured:**   $   15,167.24

**Amount of the claim that is unsecured:**   $_____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____1,496.10

**Annual Interest Rate** (when case was filed) _3.45_ %

☑ Fixed

☐ Variable

**10.  Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11.  Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410    Proof of Claim    page 2

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | | |
|---|---|---|---|
| | ☐ Yes. *Check one:* | | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b). | *Check the appropriate box:* |
|---|---|
| | ☐ I am the creditor. |
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | ☑ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |
| A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt. |
| | I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct. |
| | Executed on date  11/13/2018 |
| | MM / DD / YYYY |
| | |
| | /s/ Reid E. Dyer |
| | Signature |
| | **Print the name of the person who is completing and signing this claim:** |

| | | | | |
|---|---|---|---|---|
| Name | Reid E. Dyer | | | |
| | First name | Middle name | | Last name |
| Title | Attorney | | | |
| Company | Moore & Van Allen, PLLC | | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | | |
| Address | 78 Wentworth Street | | | |
| | Number      Street | | | |
| | Charleston | | SC | 29401 |
| | City | | State | ZIP Code |
| Contact phone | 843-579-7000 | | Email | reiddyer@mvalaw.com |



JOHN DEERE
FINANCIAL

Print Date: 9/21/2018

## Account: Transaction History

🖨 Print

**Account Number**        3900

| Seq. # | Post Date Eff Date | Description | Total | Principal | Interest | Late Fees | Misc Fees | Principal Balance |
|---|---|---|---|---|---|---|---|---|
| | | | | | --------Amount Applied To-------- | | | |
| 25 | 05/05/2016 04/20/2016 | Opening Balance | $32,382.00 | $32,382.00 | $0.00 | $0.00 | $0.00 | $32,382.00 |
| 27 | 05/05/2016 04/20/2016 | Insurance Disbursement | $790.00 | $790.00 | $0.00 | $0.00 | $0.00 | $33,172.00 |
| 32 | 06/02/2016 06/02/2016 | Payment | -$746.21 | -$606.06 | -$134.82 | -$5.33 | $0.00 | $32,565.94 |
| 35 | 06/03/2016 06/02/2016 | Payment | $746.21 | $606.06 | $134.82 | $5.33 | $0.00 | $33,172.00 |
| 39 | 06/03/2016 06/02/2016 | Past Due Charge Adjustment | -$5.33 | $0.00 | $0.00 | -$5.33 | $0.00 | |
| 42 | 06/03/2016 06/02/2016 | Payment | -$746.21 | -$611.39 | -$134.82 | $0.00 | $0.00 | $32,560.61 |
| 44 | 06/15/2016 06/15/2016 | Payment | -$750.00 | -$709.99 | -$40.01 | $0.00 | $0.00 | $31,850.62 |
| 45 | 07/15/2016 07/15/2016 | Payment | -$726.43 | -$636.11 | -$90.32 | $0.00 | $0.00 | $31,214.51 |
| 47 | 08/31/2016 08/31/2016 | Payment | -$740.88 | -$597.70 | -$138.67 | -$4.51 | $0.00 | $30,616.81 |
| 62 | 10/14/2016 10/14/2016 | Payment | -$745.39 | -$608.22 | -$127.33 | -$9.84 | $0.00 | $30,008.59 |
| 63 | 10/20/2016 10/20/2016 | Payment | -$1,495.70 | -$1,478.68 | -$17.02 | $0.00 | $0.00 | $28,529.91 |
| 64 | 12/30/2016 12/30/2016 | Payment | -$736.78 | -$545.32 | -$191.46 | $0.00 | $0.00 | $27,984.59 |
| 79 | 02/13/2017 02/13/2017 | Payment | -$1,491.60 | -$1,362.73 | -$119.03 | -$9.84 | $0.00 | $26,621.86 |
| 80 | 03/24/2017 03/24/2017 | Payment | -$740.88 | -$642.74 | -$98.14 | $0.00 | $0.00 | $25,979.12 |
| 81 | 04/28/2017 04/28/2017 | Payment | -$500.00 | -$414.06 | -$85.94 | $0.00 | $0.00 | $25,565.06 |
| 112 | 05/31/2017 05/31/2017 | Payment | -$986.18 | -$896.59 | -$79.75 | -$9.84 | $0.00 | $24,668.47 |
| 113 | 06/21/2017 06/21/2017 | Payment | -$746.30 | -$697.34 | -$48.96 | $0.00 | $0.00 | $23,971.13 |
| 114 | 07/07/2017 07/07/2017 | Payment | -$750.00 | -$713.75 | -$36.25 | $0.00 | $0.00 | $23,257.38 |
| 115 | 08/10/2017 08/10/2017 | Payment | -$731.76 | -$657.01 | -$74.75 | $0.00 | $0.00 | $22,600.37 |
| 120 | 10/06/2017 10/06/2017 | Payment | -$740.88 | -$612.56 | -$121.76 | -$6.56 | $0.00 | $21,987.81 |
| 121 | 10/12/2017 10/12/2017 | Payment | -$1,487.91 | -$1,475.44 | -$12.47 | $0.00 | $0.00 | $20,512.37 |
| 132 | 01/12/2018 01/12/2018 | Payment | -$741.29 | -$553.49 | -$178.37 | -$9.43 | $0.00 | $19,958.88 |
| 134 | 01/31/2018 01/31/2018 | Payment | -$750.31 | -$709.95 | -$35.85 | -$4.51 | $0.00 | $19,248.93 |
| 135 | 02/23/2018 02/23/2018 | Payment | -$745.39 | -$703.55 | -$41.84 | $0.00 | $0.00 | $18,545.38 |
| 136 | 02/28/2018 02/23/2018 | Payment Reversal NES | $745.39 | $703.55 | $41.84 | $0.00 | $0.00 | $19,248.93 |
| 143 | 03/05/2018 02/23/2018 | NSE Fees | $25.00 | $0.00 | $0.00 | $0.00 | $25.00 | |

| 174 | 04/03/2018 Payment 04/03/2018 | -$1,525.62 | -$1,365.00 | -$112.80 | -$22.82 | -$25.00 | $17,883.93 |
| 255 | 07/19/2018 Payment 07/19/2018 | -$3,043.87 | -$2,789.90 | -$180.87 | -$73.10 | $0.00 | $15,094.03 |

External View

RECEIVED
APR 25 2016



JOHN DEERE
FINANCIAL

Application ID: 9711

Version Number: 6

FIXED RATE CONTRACT
AG/C&CE Business or Commercial Use

## LOAN CONTRACT - SECURITY AGREEMENT
Contract Begin Date : 04/20/2016

| SELLER'S NAME AND ADDRESS | DEALER NUMBER | PHONE NUMBER |
|---|---|---|
| AG-PRO, LLC DBA AG-PRO<br>10963 GEORGIA HIGHWAY 106<br>CARNESVILLE, GA 30521 | 01-9259 | 706-384-5555 |

| BORROWER'S NAME AND PHYSICAL ADDRESS | BORROWER'S TAX ID NUMBER | BORROWER'S PHONE NO | TYPE OF BUSINESS |
|---|---|---|---|
| J. OLLIS FARMS, LLC<br>2450 GRADEN RD<br>WARE SHOALS, SC 29692-2918 | **-**2779 | 864-444-4846 | Limited Liability Company |

| BORROWER RESIDES IN (County State) | BORROWER AGREES TO KEEP GOODS IN (County/State) |
|---|---|
| LAURENS, SC | LAURENS, SC |

NAME AND TITLE OF SIGNING OFFICER
JAMES OLLIS - Chief Executive Officer

| CO-BORROWER'S NAME AND PHYSICAL ADDRESS | CO-BORROWER'S SOC. SEC. NUMBER | CO-BORROWER'S PHONE NO | TYPE OF BUSINESS |
|---|---|---|---|
| JAMES EDWIN OLLIS<br>2450 GRADEN RD<br>WARE SHOALS, SC 29692-2918 | **-**8449 | 864-444-4846 | |

**1. Parties.** This Loan Contract-Security Agreement ("Contract") is entered into between Deere & Company ("we", "us" or "our") and the borrower(s) indicated above ("you" or "your"). If more than one borrower is indicated, each borrower shall be jointly and severally liable for all of the obligations under this Contract.

**2. Loan.** You hereby apply for a loan in the Amount Financed shown below, which, if accepted by us, the loan will be (a) subject to the terms and conditions set forth in this Contract, and (b) used to finance the balance due on the purchase from the Seller of the equipment and/or services described below (the "Equipment"). All attachments and accessories itemized on this Contract and all replacements, parts and repairs to the Equipment shall form part of the Equipment.

**3. Installment Payments.** In addition to any down payment, you agree to pay us the Amount Financed, together with finance charges from the Date Finance Charge Begins, at the Annual Percentage Rate, by remitting each of the Installment Payments on or before the due dates indicated. Any amounts applied to this Contract will be applied first to any late charges, any charges for dishonored checks and any other fees or costs due under this agreement, then to finance charges, computed on the date the payment is received and the remainder to the Amount Financed. You agree that your payments will be applied as of the date of receipt if received by 11:00 a.m. Central Time Monday through Friday (otherwise next business day); but if payment is not accompanied by the payment stub, is not in the envelope we provided, includes other items such as other checks, staples or paper clips, or is not received at that location, credit may be delayed up to five days. This Contract is not accepted by us until we sign it, even if you have made a payment to us. You agree to remit to us the Installment Payments and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice. **YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER.** For any scheduled payment which is not received by its due date, you agree to pay us interest on the unpaid amount at a rate of 20% per annum on that scheduled payment, but in no event more than the maximum lawful rate, from the due date until paid. Restrictive endorsements on checks you send to us will not change or reduce your obligations to us. We will not lose any rights if we accept late or partial payments or delay enforcing our rights under this Contract. If a check or electronic payment authorization you give us is dishonored upon first presentment, you agree to pay us a fee of $25.00, or the maximum amount permitted by law, whichever is less. Installment Payments and other payments, including proceeds of insurance or any sale of the Equipment, may be applied, at our discretion and in spite of any instructions you may provide, to any obligation you may have to us or any of our affiliates. If the total of all payments made by you exceeds the total of all amounts due under this Contract by less than $25.00, we may retain such excess.

EQUIPMENT PURCHASED

### THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE

| DOC8015 | Settlement Nbr<br>Application ID | Equipment Type   Agriculture   Agricultural<br>Version Number   6 | 04/20/2016 03:25 PM | Page 1 of 6 |
|---|---|---|---|---|

Revision Date  14 September 2014



| QTY | NEW/ USED | MFR | MODEL | EQUIPMENT DESCRIPTION | AMOUNT |
|---|---|---|---|---|---|
| 1 | USED | JD | 6320 | 6320 Utility Cab Tractor | $38,000.00 |

PRODUCT ID NO.   L06320H374776

### TRADE-IN and CASH DOWN PAYMENT

| QTY. | MFR. | MODEL | DESCRIPTION OF TRADE-IN (From Purchase Order) | PRODUCT ID NO. | AMOUNT |
|---|---|---|---|---|---|
| | | | | TOTAL TRADE-IN: | $0.00 |
| | | | | CASH DOWN PAYMENT: | $6,000.00 |
| | | | | RENTAL APPLIED: | $0.00 |
| | | | | TOTAL TRADE-IN PLUS CASH DOWN: | $6,000.00 |

### INSTALLMENT PAYMENTS

DATE FINANCE CHARGE BEGINS:  April 20, 2016

The first Installment Payment Due Date is May 20, 2016 and each successive Installment Payment is due on the same day of the Month thereafter, (the "Billing Period") unless otherwise provided below;

| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | DUE DATE |
|---|---|---|
| 48 | $740.88 | May 20, 2016 |

The amounts shown below as Finance Charge, Total of Payments and Total Sale Price are estimates based upon the assumption that payments will be made on the scheduled payment due date according to the installment schedule. The actual Finance Charge, Total of Payments, and Total Sale Price may vary depending upon the timing of any early or late payment of scheduled installments.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| SALES TAX  (Paid to Govt. Agencies) | | $0.00 |
| CASH PRICE  (Including Tax) | 1 | $38,000.00 |
| TOTAL DOWN PAYMENT  (Sum of Trade-In & Cash Down Payment) | 2 | $6,000.00 |
| UNPAID BALANCE OF CASH PRICE (The amount credited to your account with us) | 3 | $32,000.00 |
| INSURANCE  (Physical Damage Paid to Insurance Companies) | 4 | $790.00 |
| ORIGINATION FEES | 4A | $350.00 |
| OFFICIAL FEES  (Paid to Public Officials) | 5 | $32.00 |
| AMOUNT FINANCED  (Lines 3, 4, 4A, 5 & 5A (if Applicable) ) The amount of credit provided to you | 6 | $33,172.00 |
| FINANCE CHARGE  (Based on Line 6) The dollar amount the credit will cost you. | 7 | $2,390.24 |
| TOTAL OF PAYMENTS  (Lines 6 & 7) The amount you will have paid after you have made all payments as scheduled. | 8 | $35,562.24 |
| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) | | 3.45% |
| TOTAL SALE PRICE  (Lines 1, 4, 4A, 5, 5A (if Applicable), & 7) The total price of your purchase on credit, including the Total Down Payment of $6,000.00. | | $41,562.24 |

**4. Prepayment.**  You may prepay your obligations under this Contract in full at any time by paying the unpaid principal balance and any earned and unpaid finance charges.  The unpaid principal balance includes any origination fee.

**5. Security Interest; Missing Information.**  You grant us and our affiliates a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any of our affiliates or assignees at any time and you agree that any security interest you have granted or hereafter grant to us or any of our affiliates shall also secure your obligations under this Contract.  You agree that we may act as agent for our affiliates and our affiliates may act as agent for us, in order to perfect and realize on any security interest described above.  Upon receipt of all amounts due and to become due under this Contract, we will release our security interest in the Equipment (but not the security interest for amounts due an affiliate), provided no event of default has occurred and is continuing.  You agree to keep the Equipment free and clear of all liens and encumbrances, except those in favor of us and our affiliates as described above, and to promptly notify us if a lien or encumbrance is placed or threatened against the Equipment.  You irrevocably authorize us, at any time, to (a) insert or correct information on this Contract, including your correct legal name, serial numbers and Equipment descriptions; (b) submit notices and proofs of loss for any required insurance; (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds; and (d) file a financing statement(s) which describes either the Equipment or all equipment currently or in the future financed by us. Notwithstanding any other election you may make, you agree that (1) we can access any information regarding the location, maintenance, operation and condition of the Equipment; (2) you irrevocably authorize anyone in possession of that information to provide all of that information to us upon our request; (3)  you will not disable or otherwise interfere with any information gathering or transmission device within or attached to the Equipment; and (4) we may reactivate any such device.

### THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE

| DOC8015 | Settlement Nbr: ███████ | Equipment Type:  Agriculture  Agricultural | 04/20/2016 03:25 PM | Page 2 of 6 |
|---|---|---|---|---|
| | Application ID: | Version Number:  6 | | |

Revision Date: 14 September 2014



**6. Equipment Maintenance, Operation and Use.** You agree to (a) USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (b) operate and maintain the Equipment in accordance with all (1) applicable laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), and (3) insurance policy terms and requirements; (c) perform (at your expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted; (d) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time; and (e) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees.

**7. Insurance.** You agree, at your cost, to maintain all-risk insurance coverage with respect to the Equipment for no less than its full replacement value, naming us (and our successor and assigns) as sole loss payee. You may choose who provides that insurance, but that insurance must be with companies and policies acceptable to us. Your obligation to insure the Equipment continues until all your other obligations under this Contract are satisfied. Each insurance policy must provide that (1) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us; (2) the insurer will give us at least 30 days' prior written notice before any cancellation of, non-renewal of, or material change to, the policy; and (3) such coverage shall be primary over any insurance purchased by us (or our affiliates).

Unless you provide us with evidence of the required insurance coverage's, we may, but are not required to, purchase insurance, at your expense, to protect our interests in the Equipment and charge you an insurance fee on which we may make a profit. This insurance may not (1) protect your interests; or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Contract. **THE COST OF THE INSURANCE MAY BE MORE THAN THE COST OF THE INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. THE COVERAGES OF THAT INSURANCE MAY BE DIFFERENT FROM THE COVERAGES OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN.** You agree to pay us the cost of any insurance plus a $150 insurance placement and service fee. You will immediately pay that amount to us or we may, at our sole discretion, add that cost to the Account Balance and increase the required Installment Payments accordingly.

If a default occurs, you authorize us to cancel the insurance on the Equipment and apply any returned premiums to the Account Balance.

If the cost of the insurance was included in the Amount Financed, that insurance will terminate (a) if your debt to us is discharged, (b) if we release our security interest in the Equipment, (c) if a default occurs and we cancel the insurance, (d) if the Equipment is repossessed, (e) if the Floater Policy under which you purchased that insurance terminates, or (f) on the due date of the final scheduled Installment Payment.

**8. Loss or Damage.** Until all of your obligations under this Contract are satisfied, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss. If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Contract will continue to apply. If the Equipment cannot be repaired or replaced, you agree to immediately pay us the Account Balance. Upon receipt of the Account Balance, we will release our security interest in the Equipment. All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any of our affiliates.

**9. Default.** We may determine you to be in default if: (a) you fail to remit to us any Installment Payment or other payment when due; (b) you breach any other provision of this Contract; (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy, attachment, execution or insolvency law or you or any such guarantor make an assignment for the benefit of creditors; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any of our affiliates); (f) you or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies or becomes incompetent; (g) you fail to maintain the insurance required by this Contract; or (h) if for any reason, we deem the debt or the Equipment to be insecure. Time is of the essence under this Contract.

**10. Remedies.** If we determine that you are in default, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the Account Balance as of the date of such default, without presentment or demand; (b) declare any other agreements between you and us in default; (c) terminate any of your rights (but none of your obligations) under this Contract and any other agreement between you and us (or any of our affiliates); (d) require you to

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC8015 | Settlement Nbr. | Equipment Type Agriculture Agricultural | Page 3 of 6 |
|---|---|---|---|
| | Application ID | Version Number 6    04/20/2016 03:25 PM | |

Revision Date: 14 September 2014



deliver the Equipment to us in the manner outlined below, or take possession of the Equipment; (e) lease or sell the Equipment or any portion thereof at a public or private sale; (f) apply the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) to your obligations under this Contract, with you remaining liable for any deficiency; (g) require you to reimburse and indemnify us for all losses, claims, damages and expenses of any kind or nature whatsoever incurred in connection with the Equipment or this Contract and/or the enforcement of our remedies hereunder including, without limitation, repossession, repair and collection costs, damage awards, attorneys' fees and court and bankruptcy fees and costs; (h) exercise any other remedy available at law or in equity; and (i) take on your behalf (at your expense) any action required by this Contract which you fail to take  These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately.  Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right. In no event will the costs and expenses referred to in this section be more than those allowed by law.

If we determine that you are in default, all Equipment must be delivered to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records.  Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, as determined by us in our sole discretion.

**11. Assignment.** You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent.  Any assignment without our consent will be void.  We may assign this Contract or our interest in the Equipment at any time without notice to you and without your consent.  We may provide information about you to any prospective assignee or participant.  You agree not to assert against our assignee any claims, offsets or defenses which you may have against us.

**12. Representations and Warranties.**  You represent, warrant and covenant to us so long as this Contract is in effect, that: (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) the execution, delivery and performance by you of this Contract does not (and will not) violate any applicable law or breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound; (d) you will comply with all applicable laws, ordinances and regulations; (e) upon execution of this Contract, the Seller shall have good and marketable title to any trade-in equipment free and clear of all liens and encumbrances whatsoever, (f) all information you have given to us is true, accurate and complete; (g) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred; (h) you will promptly deliver to us such financial statements, reports and other information as we may request; (i) the Equipment was selected by you, (j) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (k) the safe operation and the proper servicing of the Equipment were explained to you; (l) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (m) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (n) the Equipment is in good condition and repair (operating and otherwise); (o) the Equipment shall be used only for the purpose indicated herein, will remain in your possession and will not be sold, rented or leased; and (p) you will pay all taxes assessed on the Equipment.

Unless you are an individual, you also represent, warrant and covenant to us that:  (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable; (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us; and (d) the execution, delivery and performance by you of this Contract will not breach any provision of your organizational documents.

If you are an individual, you agree not to move your residence to a different county or state without at least 30 days' prior written notice to us.

**13. Governing Law; Jurisdiction; Venue. THIS CONTRACT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF IOWA, WHERE THIS CONTRACT IS ACCEPTED AND ENTERED INTO,** except for its conflict of laws provisions.  You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. **YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL.**  However, you acknowledge that any Iowa state law compulsory mediation requirements will apply to this agreement or the Equipment only if you are a resident of the State of Iowa.

**14. Miscellaneous. WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR**

---

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC8015 | Settlement Nbr ▮ | Equipment Type  Agriculture  Agricultural | 04/20/2016 03.25 PM | Page 4 of 6 |
| --- | --- | --- | --- | --- |
| | Application ID | Version Number  6 | | |

Revision Date: 14 September 2014



OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES. You acknowledge that the Seller of the Equipment is not an agent of ours, or authorized to act for or bind us. You agree not to withhold any amount you owe us if you believe you have a claim against us, the Seller, or any manufacturer(s) of the Equipment, but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Contract supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. No part of this Contract can be amended, waived or terminated except by a writing signed by both you and us. This Contract may be signed in separate counterparts that, together, will constitute one document. A paper or facsimile transmission copy of your signature or an electronic signature shall constitute an original signature under applicable law for all purposes. If a court finds any part of this Contract to be invalid or unenforceable, the remainder of this Contract will remain in effect. You permit us, and those third parties who provide services to us, to monitor and record telephone conversations between you and us. You agree that by providing us any telephone number, including a mobile phone number, we, any debt collector we retain, and those third parties who provide services to us, can contact you using that number, including calls using an automatic dialing and announcing device and prerecorded calls. All of our rights shall remain in effect after the expiration or termination of this Contract. Any origination fee will be paid to the dealer or us and is not a document preparation fee and all documents you sign will be prepared by John Deere Financial and not by the dealer.

You and we intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. In the event any amount in excess of that allowed by law is charged or recovered, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally allowed under this Contract, or refunded to you.

**PHYSICAL DAMAGE INSURANCE REQUIRED: If you elect Physical Damage Insurance below, such insurance does not include liability insurance coverage for bodily injury or property damage caused to others.**

| INSURANCE DISCLOSURES: You may obtain property insurance from any agent that is acceptable to us. Physical Damage Insurance will not be provided unless you sign at the right and the premium is indicated. | TERM IN MONTHS | TOTAL PREMIUM |
|---|---|---|
| | 48 | $790.00 |

By signing below, you want Physical Damage Insurance and agree to pay the premium. (Sign in this box)

X _____

JAMES OLLIS, Chief Executive Officer

**THE TERMS OF THIS CONTRACT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS CONTRACT, YOU AGREE TO THE TERMS ON ALL PAGES. THIS CONTRACT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

**I agree that I have received a completely filled in copy of this Agreement.**

J. OLLIS FARMS, LLC

By: _____

(Date Signed)      JAMES OLLIS, Chief Executive Officer

X _____

(Date Signed)      JAMES EDWIN OLLIS, Individually

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC8015 | Settlement Nbr: | Equipment Type: Agriculture Agricultural | | Page 5 of 6 |
|---|---|---|---|---|
| | Application ID: ███ | Version Number: 6 | 04/20/2016 03:25 PM | |

Revision Date: 14 September 2014



Accepted By: **Deere & Company (Lender)**
6400 NW 86th Street, Johnston, IA 50131-6600

By: _Jeff W. Jones_

(Date Agreement Signed)        (Authorized Signature)

MAY 0 5 2016

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| | Settlement Nbr: | ████ | Equipment Type: Agriculture Agricultural | | |
|---|---|---|---|---|---|
| DOC8015 | Application ID: | | Version Number: 6 | 04/20/2016 03:25 PM | Page 6 of 6 |

Revision Date: 14 September 2014



Payoff Details
Customer : J. OLLIS FARMS, LLC
Account Number :          3900
Payoff Date : 09/04/2018
Payoff Amount : $14,845.42
Principal : $15,094.03
Interest : $67.06
Insurance Rebate : -$321.82
Late Charge Due : $6.15
Net Misc Charge : $0.00

# JOHN DEERE TRACTOR MODEL 6320 CAB (2003)

**Iron** Guides

| Serial Number | Guide Issue | Region | Record ID | Currency | Exchange | Appraisal Date |
|---|---|---|---|---|---|---|
| L06320H374776 | Fall 2018 | Southeast US | 684508 | USD | -- | 9/21/2018 |

| Name | | Company | | Phone Number | | Email Address |
|---|---|---|---|---|---|---|
| - | | - | | - | | - |

## VALUES

- Apply Wholesale & Advertised Option Margins

| | Wholesale | Trade Rough | Trade Premium | Resale Cash | Advertised |
|---|---|---|---|---|---|
| Base Value | $14,049 | $14,698 | $16,768 | $20,695 | $21,476 |
| Usage Adjustment | 0 | 0 | 0 | 0 | 0 |
| Options Adjustment | 0 | 0 | 0 | 0 | 0 |
| Recond. Adjustment | -- | 0 | 0 | -- | -- |
| Adjusted IRON Total | $14,049 | $14,698 | $16,768 | $20,695 | $21,476 |

## APPRAISAL

Adjustments

| | | |
|---|---|---|
| Usage Adjustment | Eng Hours: 5,360 (IRON Avg. 5,360); Per Eng Hours Adjust: $1.00 (IRON Avg. $1.00); | $0 |
| | | $0 |
| Selected Options Total | | $0 |
| My Options Total | | |
| Reconditioning | IRON Avg. Recond.: 2,100 - Actual Recon.: 2,100 = | $0 |

## SPECS & OPTIONS

Standard: Engine C.I.D. 276, Engine Cyls 4, Engine Fuel Diesel, Engine Make John Deere, Fuel Capacity 43.6 Gal, HP - PTO 80, Trans - Fwd/Rev Std 12/4, Trans - Std SyncroPlus, MFWD - Opt, Tires - Front 10.00x16, Tires - Rear 18.4Rx34, Cab - Std, Hydraulic Outlets 2, PTO - Incl, PTO - Speed 540, 3 Pt. - Incl, 3 Pt. Hitch Cat. II, Years Made 2002-2007, Last MSRP US 51415

| Selected Options Subtotal | $0 |  | |
|---|---|---|---|
| - Trans 16/16 PwrQuad Plus | 2,400 | - Cab ClimaTrak | 530 |
| - Trans 24/24 AutoQuad | 3,400 | - Cab Suspension Hydro | 1,380 |
| - Trans Creeper | 1,240 | - Cab/Air/Heater | 0 |
| - Trans Infinitely Variable (IVT | 6,600 | - Seat Air Suspension | 540 |
| - Fenders Front | 180 | - GreenStar Ready | 1,130 |
| - Fenders Front Pivoting | 410 | - Headland Mgmt System | 300 |
| - MFWD | 4,300 | - Performance Monitor | 410 |
| - MFWD w/Triple Link Susp | 2,600 | - 14 Front Wts w/Brkt | 880 |
| - Rack & Pinion Axle - Cast | 720 | - 3 Hyd Outlets | 470 |
| - Rack & Pinion Axle - Steel | 630 | - Deluxe Hydraulics | 270 |
| - Loader | 3,630 | - PTO 540/1000 Ind | 380 |
| - Loader/Self-Leveling | 5,350 | - PTO Front | 2,900 |

Copyright 2018 IRON Solutions Inc. All rights reserved. Redistribution is prohibited.

# UCC-1

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

JOHN DEERE FINANCIAL

6400 NW 86TH ST

JOHNSTON, IA 50131

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

*(Filing office stamp, rotated:)* SC SECRETARY OF STATE    S
160506-1200570    Lapse Date: 05/06/2021
Date: 5/6/2916   Time: 17:00 PM   Page Count: 1 Pg   Debtor Count: 2   Filing Fees: 36.00   Electronic Records Access: 8.00   Total: $16.00   Order ID#

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| J. OLLIS FARMS, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2450 GRADEN RD | WARE SHOALS | SC | 29692 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| OLLIS | JAMES | EDWIN | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2450 GRADEN RD | WARE SHOALS | SC | 29692 | US |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DEERE & COMPANY | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 6400 NW 86TH ST | JOHNSTON | IA | 50131 | US |

4. COLLATERAL: This financing statement covers the following collateral:

John Deere 6320 Utility Tractor S/N: 374776

together with (1) all attachments, accessories and components, repairs and improvements, (2) all accounts, general
intangibles, contract rights and chattel paper relating thereto, and (3) all proceeds, thereto including, without
limitation, insurance, sale, lease and rental proceeds, and proceeds of proceeds.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:        6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility    ☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

SOUTH CAROLINA SECRETARY OF STATE'S OFFICE, 1205 Pendleton Street Suite 525 Columbia, SC 29201        (Rev. 07/01/13)

# EXHIBIT B

**Fill in this information to identify the case:**

Debtor 1  James Edwin Ollis

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  District of South Carolina

Case number  18-04549-hb

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

---

## Part 1:  Identify the Claim

**1. Who is the current creditor?**

Deere & Company
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Reid E. Dyer
Name

78 Wentworth Street
Number       Street

Charleston        SC        29401
City                State            ZIP Code

Contact phone  843-579-7000

Contact email  reiddyer@mvalaw.com

Where should payments to the creditor be sent? (if different)

Name

Number       Street

City                State            ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____    Filed on _____
                                                                    MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

---

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**
   ☐ No
   ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   9   0   7   7

7. **How much is the claim?**   $_____ 8,932.06 . **Does this amount include interest or other charges?**
   ☐ No
   ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   money loaned

9. **Is all or part of the claim secured?**
   ☐ No
   ☑ Yes. The claim is secured by a lien on property.

   **Nature of property:**
   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
   ☐ Motor vehicle
   ☑ Other. Describe:   630 mower conditioner

   **Basis for perfection:**   UCC financing statement
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:**   $_____ 15,040.00
   **Amount of the claim that is secured:**   $_____ 8,932.06

   **Amount of the claim that is unsecured:**   $_____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:**   $_____ 901.36

   **Annual Interest Rate** (when case was filed)_____ 0.00 %
   ☑ Fixed
   ☐ Variable

10. **Is this claim based on a lease?**
    ☑ No
    ☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

11. **Is this claim subject to a right of setoff?**
    ☑ No
    ☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

                                                                            Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                          $ _____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).       $ _____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).                                                  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).       $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).          $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.          $ _____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    11/13/2018
                    ‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                    MM / DD / YYYY

/s/ Reid E. Dyer
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Reid E. Dyer | | |
|---|---|---|---|
| | First name | Middle name | Last name |

Title        Attorney

Company      Moore & Van Allen, PLLC
             Identify the corporate servicer as the company if the authorized agent is a servicer.

Address      78 Wentworth Street
             Number    Street
             Charleston                              SC        29401
             City                                    State     ZIP Code

Contact phone    843-579-7000          Email  reiddyer@mvalaw.com

---



**JOHN DEERE**
FINANCIAL

Print Date: 9/21/2018

🖨 Print

## Account: Transaction History

**Account Number**          9077

| Seq. # | Post Date Eff Date | Description | Total | Principal | Interest | Late Fees | Misc Fees | Principal Balance |
|---|---|---|---|---|---|---|---|---|
| | | | | | --------Amount Applied To-------- | | | |
| 27 | 04/04/2016 03/22/2016 | Opening Balance | $20,382.00 | $20,382.00 | $0.00 | $0.00 | $0.00 | $20,382.00 |
| 28 | 04/04/2016 03/22/2016 | Insurance Disbursement | $1,053.00 | $1,053.00 | $0.00 | $0.00 | $0.00 | $21,435.00 |
| 30 | 04/21/2016 04/21/2016 | Payment | -$446.56 | -$446.56 | $0.00 | $0.00 | $0.00 | $20,988.44 |
| 32 | 06/02/2016 06/02/2016 | Payment | -$449.20 | -$446.56 | $0.00 | -$2.64 | $0.00 | $20,541.88 |
| 33 | 06/15/2016 06/15/2016 | Payment | -$500.00 | -$500.00 | $0.00 | $0.00 | $0.00 | $20,041.88 |
| 34 | 07/15/2016 07/15/2016 | Payment | -$393.12 | -$393.12 | $0.00 | $0.00 | $0.00 | $19,648.76 |
| 35 | 08/31/2016 08/31/2016 | Payment | -$446.56 | -$446.56 | $0.00 | $0.00 | $0.00 | $19,202.20 |
| 47 | 10/14/2016 10/14/2016 | Payment | -$446.56 | -$441.28 | $0.00 | -$5.28 | $0.00 | $18,760.92 |
| 48 | 10/19/2016 10/19/2016 | Payment | -$898.16 | -$898.16 | $0.00 | $0.00 | $0.00 | $17,862.76 |
| 49 | 12/30/2016 12/30/2016 | Payment | -$446.80 | -$446.80 | $0.00 | $0.00 | $0.00 | $17,415.96 |
| 62 | 02/13/2017 02/13/2017 | Payment | -$898.40 | -$893.12 | $0.00 | -$5.28 | $0.00 | $16,522.84 |
| 63 | 03/24/2017 03/24/2017 | Payment | -$446.56 | -$446.56 | $0.00 | $0.00 | $0.00 | $16,076.28 |
| 64 | 04/28/2017 04/28/2017 | Payment | -$740.88 | -$740.88 | $0.00 | $0.00 | $0.00 | $15,335.40 |
| 65 | 05/24/2017 05/24/2017 | Payment | -$152.24 | -$152.24 | $0.00 | $0.00 | $0.00 | $15,183.16 |
| 70 | 07/07/2017 07/07/2017 | Payment | -$900.00 | -$896.40 | $0.00 | -$3.60 | $0.00 | $14,286.76 |
| 106 | 10/06/2017 10/06/2017 | Payment | -$898.00 | -$883.70 | $0.00 | -$14.30 | $0.00 | $13,403.06 |
| 107 | 10/12/2017 10/12/2017 | Payment | -$1,350.21 | -$1,350.21 | $0.00 | $0.00 | $0.00 | $12,052.85 |
| 113 | 01/31/2018 01/31/2018 | Payment | -$442.17 | -$442.17 | $0.00 | $0.00 | $0.00 | $11,610.68 |
| 114 | 02/23/2018 02/23/2018 | Payment | -$446.56 | -$446.56 | $0.00 | $0.00 | $0.00 | $11,164.12 |
| 115 | 02/28/2018 02/23/2018 | Payment Reversal NSF | $446.56 | $446.56 | $0.00 | $0.00 | $0.00 | $11,610.68 |
| 117 | 03/02/2018 02/23/2018 | NSF Fees | $25.00 | $0.00 | $0.00 | $0.00 | $25.00 | |
| 147 | 04/03/2018 04/03/2018 | Payment | -$926.04 | -$888.44 | $0.00 | -$12.60 | -$25.00 | $10,722.24 |
| 226 | 07/19/2018 07/19/2018 | Payment | -$1,832.85 | -$1,790.18 | $0.00 | -$42.67 | $0.00 | $8,932.06 |

External View

**Payoff Details**
Customer : OLLIS, JAMES EDWIN
Account Number :          9077
Payoff Date : 09/04/2018
Payoff Amount : $8,524.18
Principal : $8,932.06
Interest : $0.00
Insurance Rebate : -$407.88
Late Charge Due : $0.00
Net Misc Charge : $0.00

RECEIVED

MAR 2 8 2016



JOHN DEERE
FINANCIAL    JOHN DEERE FINANCIAL

Application ID: 12117625
Version Number:    4
FIXED RATE CONTRACT
AG/C&CE Business or Commercial Use

## LOAN CONTRACT - SECURITY AGREEMENT

Contract Begin Date · 03/22/2016

| SELLER'S NAME AND ADDRESS | DEALER NUMBER | PHONE NUMBER |
|---|---|---|
| AG-PRO, LLC DBA AG-PRO<br>2950 ATLANTA HIGHWAY<br>ATHENS, GA 30606 | 01-9259 | 706-354-0037 |

| BORROWER'S NAME AND PHYSICAL ADDRESS | | | |
|---|---|---|---|
| JAMES E OLLIS<br>2450 GRADEN RD<br>WARE SHOALS, SC 29692-2918 | BORROWER'S<br>SOC. SEC. NUMBER<br>***-**-8449 | BORROWER'S<br>PHONE NO.<br>864-444-4846 | TYPE OF<br>BUSINESS |
| BORROWER RESIDES IN (County/State)<br>LAURENS, SC | | BORROWER AGREES TO KEEP GOODS IN (County/State)<br>LAURENS, SC | |

**1. Parties.** This Loan Contract-Security Agreement ("Contract") is entered into between Deere & Company ("we", "us" or "our") and the borrower(s) indicated above ("you" or "your"). If more than one borrower is indicated, each borrower shall be jointly and severally liable for all of the obligations under this Contract.

**2. Loan.** You hereby apply for a loan in the Amount Financed shown below, which, if accepted by us, the loan will be (a) subject to the terms and conditions set forth in this Contract, and (b) used to finance the balance due on the purchase from the Seller of the equipment and/or services described below (the "Equipment"). All attachments and accessories itemized on this Contract and all replacements, parts and repairs to the Equipment shall form part of the Equipment.

**3. Installment Payments.** In addition to any down payment, you agree to pay us the Amount Financed, together with finance charges from the Date Finance Charge Begins, at the Annual Percentage Rate, by remitting each of the Installment Payments on or before the due dates indicated. Any amounts applied to this Contract will be applied first to any late charges, any charges for dishonored checks and any other fees or costs due under this agreement, then to finance charges, computed on the date the payment is received and the remainder to the Amount Financed. You agree that your payments will be applied as of the date of receipt if received by 11:00 a.m. Central Time Monday through Friday (otherwise next business day); but if payment is not accompanied by the payment stub, is not in the envelope we provided, includes other items such as other checks, staples or paper clips, or is not received at that location, credit may be delayed up to five days. This Contract is not accepted by us until we sign it, even if you have made a payment to us. You agree to remit to us the Installment Payments and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice. YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER. For any scheduled payment which is not received by its due date, you agree to pay us interest on the unpaid amount at a rate of 20% per annum on that scheduled payment, but in no event more than the maximum lawful rate, from the due date until paid. Restrictive endorsements on checks you send to us will not change or reduce your obligations to us. We will not lose any rights if we accept late or partial payments or delay enforcing our rights under this Contract. If a check or electronic payment authorization you give us is dishonored upon first presentment, you agree to pay us a fee of $25.00, or the maximum amount permitted by law, whichever is less. Installment Payments and other payments, including proceeds of insurance or any sale of the Equipment, may be applied, at our discretion and in spite of any instructions you may provide, to any obligation you may have to us or any of our affiliates. If the total of all payments made by you exceeds the total of all amounts due under this Contract by less than $25.00, we may retain such excess.

| EQUIPMENT PURCHASED | | | | | |
|---|---|---|---|---|---|
| QTY | NEW/<br>USED | MFR | MODEL | EQUIPMENT DESCRIPTION | AMOUNT |
| 1 | NEW | JD | 630 | 630 SIDE-PULL ROTARY MOWER CONDITIONER | $22,500.00 |

PRODUCT ID NO.    1E00630TTGG420576

### THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE

| DOC8015 | Settlement No.: 12117625 | Equipment Type: Agriculture Agricultural | | Page 1 of 5 |
|---|---|---|---|---|
| Revision Date: 14 September 2014 | Application ID: 12117625 | Version Number: 4 | 03/23/2016 08:20 AM | |



| TRADE-IN and CASH DOWN PAYMENT | | | | | |
|---|---|---|---|---|---|
| QTY. | MFR. | MODEL | DESCRIPTION OF TRADE-IN (From Purchase Order) | PRODUCT ID NO. | AMOUNT |
| | | | | TOTAL TRADE-IN | $0.00 |
| | | | | CASH DOWN PAYMENT | $2,500.00 |
| | | | | RENTAL APPLIED | $0.00 |
| | | | | TOTAL TRADE-IN PLUS CASH DOWN | $2,500.00 |

| INSTALLMENT PAYMENTS | | |
|---|---|---|
| DATE FINANCE CHARGE BEGINS: March 22, 2016 | | |
| The first Installment Payment Due Date is April 22, 2016 and each successive Installment Payment is due on the same day of the Month thereafter, (the "Billing Period"), unless otherwise provided below: | | |
| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | DUE DATE |
| 47 | $446.56 | April 22, 2016 |
| 1 | $446.68 | March 22, 2020 |

The amounts shown below as Finance Charge, Total of Payments and Total Sale Price are estimates based upon the assumption that payments will be made on the scheduled payment due date according to the installment schedule. The actual Finance Charge, Total of Payments, and Total Sale Price may vary depending upon the early or late payment of scheduled installments.

| ITEMIZATION OF AMOUNT FINANCED | | |
|---|---|---|
| SALES TAX (Paid to Govt. Agencies) | | $0.00 |
| CASH PRICE (Including Tax) | 1 | $22,500.00 |
| TOTAL DOWN PAYMENT (Sum of Trade-in & Cash Down Payment) | 2 | $2,500.00 |
| UNPAID BALANCE OF CASH PRICE. (The amount credited to your account with us) | 3 | $20,000.00 |
| INSURANCE (Physical Damage Paid to Insurance Companies) | 4 | $1,053.00 |
| ORIGINATION FEES | 4A | $350.00 |
| OFFICIAL FEES (Paid to Public Officials) | 5 | $32.00 |
| AMOUNT FINANCED (Lines 3, 4A, 5 & 5A (if Applicable) ) The amount of credit provided to you | 6 | $21,435.00 |
| FINANCE CHARGE (Based on Line 6) The dollar amount the credit will cost you | 7 | $0.00 |
| TOTAL OF PAYMENTS (Lines 6 & 7) The amount you will have paid after you have made all payments as scheduled | 8 | $21,435.00 |
| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) | | 0.00% |
| TOTAL SALE PRICE (Lines 3, 4, 4A, 5, 5A (if Applicable), & 7) The total price of your purchase on credit, including the Total Down Payment of $2,500.00 | | $23,935.00 |

**4. Prepayment.** You may prepay your obligations under this Contract in full at any time by paying the unpaid principal balance and any earned and unpaid finance charges. The unpaid principal balance includes any origination fee.

**5. Security Interest; Missing Information.** You grant us and our affiliates a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any of our affiliates or assignees at any time and you agree that any security interest you have granted or hereafter grant to us or any of our affiliates shall also secure your obligations under this Contract. You agree that we may act as agent for our affiliates and our affiliates may act as agent for us, in order to perfect and realize on any security interest described above. Upon receipt of all amounts due and to become due under this Contract, we will release our security interest in the Equipment (but not the security interest for amounts due an affiliate), provided no event of default has occurred and is continuing. You agree to keep the Equipment free and clear of all liens and encumbrances, except those in favor of us and our affiliates as described above, and to promptly notify us if a lien or encumbrance is placed or threatened against the Equipment. You irrevocably authorize us, at any time, to (a) insert or correct information on this Contract, including your correct legal name, serial numbers and Equipment descriptions; (b) submit notices and proofs of loss for any required insurance; (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds; and (d) file a financing statement(s) which describes either the Equipment or all equipment currently or in the future financed by us. Notwithstanding any other election you may make, you agree that (1) we can access any information regarding the location, maintenance, operation and condition of the Equipment; (2) you irrevocably authorize anyone in possession of that information to provide all of that information to us upon our request; (3) you will not disable or otherwise interfere with any information gathering or transmission device within or attached to the Equipment; and (4) we may reactivate any such device.

**6. Equipment Maintenance, Operation and Use.** You agree to (a) USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (b) operate and maintain the Equipment in accordance with all (1) applicable laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), and (3) insurance policy terms and requirements; (c) perform (at your expense) all

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC8015 | Settlement No.: 12117625 | Equipment Type: Agriculture Agricultural | | Page 2 of 5 |
|---|---|---|---|---|
| | Application ID: 12117625 | Version Number: 4 | 03/23/2016 08:20 AM | |

Revision Date: 14 September 2014



maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted; (d) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time; and (e) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees.

**7. Insurance.** You agree, at your cost, to maintain all-risk insurance coverage with respect to the Equipment for no less than its full replacement value, naming us (and our successor and assigns) as sole loss payee. You may choose who provides that insurance, but that insurance must be with companies and policies acceptable to us. Your obligation to insure the Equipment continues until all your other obligations under this Contract are satisfied. Each insurance policy must provide that (1) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us; (2) the insurer will give us at least 30 days' prior written notice before any cancellation of, non-renewal of, or material change to, the policy; and (3) such coverage shall be primary over any insurance purchased by us (or our affiliates).

Unless you provide us with evidence of the required insurance coverage's, we may, but are not required to, purchase insurance, at your expense, to protect our interests in the Equipment and charge you an insurance fee on which we may make a profit. This insurance may not (1) protect your interests; or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Contract. **THE COST OF THE INSURANCE MAY BE MORE THAN THE COST OF THE INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. THE COVERAGES OF THAT INSURANCE MAY BE DIFFERENT FROM THE COVERAGES OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN.** You agree to pay us the cost of any insurance plus a $150 insurance placement and service fee. You will immediately pay that amount to us or we may, at our sole discretion, add that cost to the Account Balance and increase the required Installment Payments accordingly.

If a default occurs, you authorize us to cancel the insurance on the Equipment and apply any returned premiums to the Account Balance.

If the cost of the insurance was included in the Amount Financed, that insurance will terminate (a) if your debt to us is discharged, (b) if we release our security interest in the Equipment, (c) if a default occurs and we cancel the insurance, (d) if the Equipment is repossessed, (e) if the Floater Policy under which you purchased that insurance terminates, or (f) on the due date of the final scheduled Installment Payment.

**8. Loss or Damage.** Until all of your obligations under this Contract are satisfied, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss. If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Contract will continue to apply. If the Equipment cannot be repaired or replaced, you agree to immediately pay us the Account Balance. Upon receipt of the Account Balance, we will release our security interest in the Equipment. All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any of our affiliates.

**9. Default.** We may determine you to be in default if: (a) you fail to remit to us any Installment Payment or other payment when due; (b) you breach any other provision of this Contract; (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy, attachment, execution or insolvency law or you or any such guarantor make an assignment for the benefit of creditors; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any of our affiliates), (f) you or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies or becomes incompetent; (g) you fail to maintain the insurance required by this Contract; or (h) if for any reason, we deem the debt or the Equipment to be insecure. Time is of the essence under this Contract.

**10. Remedies.** If we determine that you are in default, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the Account Balance as of the date of such default, without presentment or demand; (b) declare any other agreements between you and us in default; (c) terminate any of your rights (but none of your obligations) under this Contract and any other agreement between you and us (or any of our affiliates), (d) require you to deliver the Equipment to us in the manner outlined below, or take possession of the Equipment; (e) lease or sell the Equipment or any portion thereof at a public or private sale; (f) apply the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) to your obligations under this Contract, with you remaining liable for any deficiency; (g) require you to reimburse and indemnify us for all losses, claims, damages and expenses of any kind or nature

THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE



| DOC8015 | Settlement Nbr. 12117625 | Equipment Type  Agriculture  Agricultural | | Page 3 of 5 |
|---|---|---|---|---|
| | Application ID  12117625 | Version Number  4 | 03/23/2016 08:20 AM | |

Revision Date: 14 September 2014

whatsoever incurred in connection with the Equipment or this Contract and/or the enforcement of our remedies hereunder including, without limitation, repossession, repair and collection costs, damage awards, attorneys' fees and court and bankruptcy fees and costs; (h) exercise any other remedy available at law or in equity; and (i) take on your behalf (at your expense) any action required by this Contract which you fail to take. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right. In no event will the costs and expenses referred to in this section be more than those allowed by law.

If we determine that you are in default, all Equipment must be delivered to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records. Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, as determined by us in our sole discretion.

**11. Assignment.** You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent. Any assignment without our consent will be void. We may assign this Contract or our interest in the Equipment at any time without notice to you and without your consent. We may provide information about you to any prospective assignee or participant. You agree not to assert against our assignee any claims, offsets or defenses which you may have against us

**12. Representations and Warranties.** You represent, warrant and covenant to us so long as this Contract is in effect, that: (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) the execution, delivery and performance by you of this Contract does not (and will not) violate any applicable law or breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound; (d) you will comply with all applicable laws, ordinances and regulations; (e) upon execution of this Contract, the Seller shall have good and marketable title to any trade-in equipment free and clear of all liens and encumbrances whatsoever, (f) all information you have given to us is true, accurate and complete; (g) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred; (h) you will promptly deliver to us such financial statements, reports and other information as we may request; (i) the Equipment was selected by you; (j) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (k) the safe operation and the proper servicing of the Equipment were explained to you; (l) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (m) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (n) the Equipment is in good condition and repair (operating and otherwise); (o) the Equipment shall be used only for the purpose indicated herein, will remain in your possession and will not be sold, rented or leased; and (p) you will pay all taxes assessed on the Equipment.

Unless you are an individual, you also represent, warrant and covenant to us that: (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable; (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us; and (d) the execution, delivery and performance by you of this Contract will not breach any provision of your organizational documents.

If you are an individual, you agree not to move your residence to a different county or state without at least 30 days' prior written notice to us.

**13. Governing Law; Jurisdiction; Venue.** THIS CONTRACT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF IOWA, WHERE THIS CONTRACT IS ACCEPTED AND ENTERED INTO, except for its conflict of laws provisions. You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL. However, you acknowledge that any Iowa state law compulsory mediation requirements will apply to this agreement or the Equipment only if you are a resident of the State of Iowa.

**14. Miscellaneous.** WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES. You acknowledge that the Seller of the Equipment is not an agent of ours, or authorized to act for or bind us. You agree not to withhold any amount you owe us if you believe you have a claim against us, the Seller, or any manufacturer(s) of the Equipment, but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed

THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE



| DOC8015 | Settlement No. 12117625 | Equipment Type  Agriculture  Agricultural | | Page 4 of 5 |
| | Application ID  12117625 | Version Number  4 | 03/23/2016 08:20 AM | |

Revision Date  14 September 2014

given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Contract supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. No part of this Contract can be amended, waived or terminated except by a writing signed by both you and us. This Contract may be signed in separate counterparts that, together, will constitute one document. A paper or facsimile transmission copy of your signature or an electronic signature shall constitute an original signature under applicable law for all purposes. If a court finds any part of this Contract to be invalid or unenforceable, the remainder of this Contract will remain in effect. You permit us, and those third parties who provide services to us, to monitor and record telephone conversations between you and us. You agree that by providing us any telephone number, including a mobile phone number, we, any debt collector we retain, and those third parties who provide services to us, can contact you using that number, including calls using an automatic dialing and announcing device and prerecorded calls. All of our rights shall remain in effect after the expiration or termination of this Contract. Any origination fee will be paid to the dealer or us and is not a document preparation fee and all documents you sign will be prepared by John Deere Financial and not by the dealer.

You and we intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. In the event any amount in excess of that allowed by law is charged or recovered, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally allowed under this Contract, or refunded to you.

**PHYSICAL DAMAGE INSURANCE REQUIRED: If you elect Physical Damage Insurance below, such insurance does not include liability insurance coverage for bodily injury or property damage caused to others.**

| INSURANCE DISCLOSURES: You may obtain property insurance from any agent that is acceptable to us. Physical Damage Insurance will not be provided unless you sign at the right and the premium is indicated. | TERM IN MONTHS | TOTAL PREMIUM |
|---|---|---|
| | 48 | $1,053.00 |

By signing below, you want Physical Damage Insurance and agree to pay the premium. (Sign in this box)

X _____
JAMES E OLLIS

THE TERMS OF THIS CONTRACT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS CONTRACT, YOU AGREE TO THE TERMS ON ALL PAGES. THIS CONTRACT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

I agree that I have received a completely filled in copy of this Agreement.

3-23-16          X _____
(Date Signed)        JAMES E OLLIS

Accepted By: Deere & Company (Lender)
6400 NW 86th Street, Johnston, IA 50131-6600

3-23-16          By: _____
(Date Agreement Signed)        (Authorized Signature)

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC8015 | Settlement Nbr: 12117625 | Equipment Type: Agriculture Agricultural | 03/23/2016 08:20 AM | Page 5 of 5 |
|---|---|---|---|---|
| | Application ID: 12117625 | Version Number: 4 | | |

Revision Date: 14 September 2014



# JOHN DEERE MOWER CONDITIONER MODEL 630 (2016)

*Iron*Guides

| Serial Number | Guide Issue | Region | Record ID | Currency | Exchange | Appraisal Date |
|---|---|---|---|---|---|---|
| 1E00630TTGG4205 78 | Fall 2018 | Southeast US | 683874 | USD | -- | 9/21/2018 |

| Name | Company | Phone Number | Email Address |
|---|---|---|---|
| - | - | - | - |

## VALUES

- Apply Wholesale & Advertised Option Margins

| | Wholesale | Trade Rough | Trade Premium | Resale Cash | Advertised |
|---|---|---|---|---|---|
| Base Value | $13,471 | $13,733 | $15,040 | $16,871 | $17,600 |
| Usage Adjustment | 0 | 0 | 0 | 0 | 0 |
| Options Adjustment | 0 | 0 | 0 | 0 | 0 |
| Recond. Adjustment | -- | 0 | 0 | -- | -- |
| Adjusted IRON Total | $13,471 | $13,733 | $15,040 | $16,871 | $17,600 |

## APPRAISAL

| | | Adjustments |
|---|---|---|
| Usage Adjustment | Acres: 3,800 (IRON Avg. 3,800); Per Acres Adjust: $0.00 (IRON Avg. $0.00); | $0 |
| Selected Options Total | | $0 |
| My Options Total | | $0 |
| Reconditioning | IRON Avg. Recond.: 650 - Actual Recon.: 650 = | $0 |

## SPECS & OPTIONS

Standard: Type - PT/SP PT, Hitch Type Side Pull, Cutterbar - No./Type 6 Discs, Cutterbar - Speed SPM/RPM 2650 RPM, Cutting Width - Std 9'9", Cond. Diameter 23.4", Cond. Type - Upper Flail, Conditioner Width 73", Tires - Std 11L-15, Weight - Lbs. 4917, Years Made 2008-2018, Approx New Selling Price $26540, Last MSRP US 28551

| Selected Options Subtotal | $0 | - Urethane Conditioner Rolls | 780 |
|---|---|---|---|
| - Swivel Hitch & Tongue | 990 | - 31x13.5-15 Tires | 260 |
| - Hyd Tilt | 170 | - Rear Powerline w/ CV Joint | 390 |

Copyright 2018 IRON Solutions Inc. All rights reserved. Redistribution is prohibited.

# UCC-1

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

> JOHN DEERE FINANCIAL
> 6400 NW 86TH ST
>
> JOHNSTON, IA 50131

SC SECRETARY OF STATE S
160405-1234249
Lapse Date: 04/05/2021
Date: 4/5/2016
Time: 12:34 PM
Page Count: 1 Pg
Debtor Count: 1
Filing Fees: $8.00
Electronic Records Access: $8.00
Total: $16.00
Order ID#

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| OLLIS | JAMES | EDWIN | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 2450 GRADEN RD | WARE SHOALS | SC / 29692 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DEERE & COMPANY | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 6400 NW 86TH ST | JOHNSTON | IA / 50131 | US |

4. COLLATERAL: This financing statement covers the following collateral:
John Deere 630 Mower Conditioner S/N: 420578
together with (1) all attachments, accessories and components, repairs and improvements, (2) all accounts, general
intangibles, contract rights and chattel paper relating thereto, and (3) all proceeds, thereto including, without
limitation, insurance, sale, lease and rental proceeds, and proceeds of proceeds.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

SOUTH CAROLINA SECRETARY OF STATE'S OFFICE, 1205 Pendleton Street Suite 525 Columbia, SC 29201        (Rev. 07/01/13)

# EXHIBIT C

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | James Edwin Ollis |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of South Carolina |
| Case number | 18-04549-hb |

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

## Part 1:    Identify the Claim

**1. Who is the current creditor?**

John Deere Financial, F.S.B.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Reid E. Dyer
Name

78 Wentworth Street
Number       Street

Charleston       SC       29401
City       State       ZIP Code

Contact phone 843-579-7000

Contact email reiddyer@mvalaw.com

**Where should payments to the creditor be sent? (if different)**

_____
Name

_____
Number       Street

_____
City       State       ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____       Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**   $ _____ 45,530.39   **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

money loaned

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  __11/13/2018__
                   MM / DD / YYYY

/s/ Reid E. Dyer
_____
Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Reid E. Dyer |
| | First name        Middle name        Last name |
| Title | Attorney |
| Company | Moore & Van Allen, PLLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 78 Wentworth Street |
| | Number        Street |
| | Charleston        SC        29401 |
| | City        State        ZIP Code |
| Contact phone | 843-579-7000        Email reiddyer@mvalaw.com |

```
R136-1                    RECOVERY MANAGEMENT SYSTEM                        08/24/18
ACTIVE

Acct...:      5136                                   Birthdate.:
Tax No.:      2779              Comaker Count: 01     Status....: 602
Name...: J OLLIS FARMS LLC                           Loan Type.: 2001
Address: 2450 GRADEN RD                               Recoverer.: DL97
Address:                                              Lst Pmt Dt: 04/13/18
City...: WARE SHOALS          State: SC               Lst Paymnt:        0.00
Ph(Ho).: 0000000000           Zip..:  29692           Commiss..%:         .00
Ph(Off): 0000000000           Cnty.:                  Interest %:         .00
  Date    Code  Description                 Posted Amount          Balance
09/21/18  01003 INT RATE CHG CALC                  14.84         45,530.39
09/21/18  10008 CHARGED OFF PRINCIPA            45,515.55        45,515.55
          **     END OF TRANSACTIONS


PF Keys:  3=Prev              7=Back   8=Fwd
```

Presorted Standard
U.S. Postage
PAID
Permit No. 155
Rock Island, IL



‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖**AUTO**3-DIGIT 535

Farm Plan Customer-Ts
519 Riverside Dr
De Forest WI 53532-3217

8402 Excelsior Drive, P.O. Box 5328
Madison, Wisconsin 53705-0328 USA

**Farm Plan**

3713969937443523

# Farm Plan™

**Credit Agreement**

AGRICULTURAL, COMMERCIAL
AND GOVERNMENTAL USE ACCOUNT

Important Amendments To Your
Farm Plan™ Credit Agreement

Agricultural/Commercial or Governmental Use
Account-Notice of Changes

May 2005

This notice contains important information regarding changes
to your Farm Plan Account. These changes will be effective
September 1, 2005. Please read it carefully, because use of
your Account after that date constitutes acceptance of these
new terms. The major changes are summarized below.

- The Late Payment Fee will change to $25.00
- NSF/Return Payment Fee will change to $35.00
- The minimum monthly Finance Charge will change
  to $1.00

A complete copy of your new credit agreement, which replaces
the terms of any previous Agreements, is printed in its entirety
on the following pages. This abbreviated summary may not
include all the details of the changes to your account. Please
refer to that Agreement for more detailed descriptions of the
changes described above, and any other changes and terms
that may be applicable in your state of residence. Please retain
this for future reference.

Your Customer Service telephone number is 1-800-356-9033.



**Farm Plan**

## FARM PLAN™ AGRICULTURAL/COMMERCIAL
## OR GOVERNMENTAL USE CREDIT AGREEMENT

**TERMINOLOGY.** In this Agreement the words *you*, *your*, and *yours* mean each person and/or business entity who applies for and is granted a Farm Plan Account, as well as any person permitted to use the Account. *FPC means* FPC Financial, f.s.b., or any subsequent holder of the Account or any balances arising under the Account.

**FARM PLAN ACCOUNT.** You request a Farm Plan Account from FPC, and further authorize FPC to issue a Farm Plan Account card to each merchant from whom you may make a purchase. By applying for a Preferred Account, or by using a Merchant Authorized Account to make a purchase from a merchant who requests FPC to open one for you, you agree that this Credit Agreement will apply to all purchases made through your Farm Plan Account by you or any person you authorize. You authorize FPC to honor any purchases you make by mail, telephone, internet, facsimile transmission (fax) or other electronic means on your Account. You agree that a signature is not necessary as identification in such cases. You agree that any authorized use of your Account constitutes your acceptance of all the terms and conditions of this Agreement, as it may be amended from time to time. If you submit your application to FPC by internet, facsimile transmission (fax) or other electronic means, you agree that the application will have the same effect as a signed original. You agree that you will promptly notify FPC in writing of any suspected loss, theft, or unauthorized use of the Account. You may be liable for the unauthorized use of your Farm Plan Account before you notify FPC in writing at Farm Plan, P.O. Box 5328, Madison, Wisconsin 53705-0328 of the unauthorized use. In any case, your liability will not exceed $50. You agree to give FPC prompt notice of any change in your name, mailing address, or place of employment. You agree that until FPC receives notice of your new address, FPC may continue to send statements and other notices to the address you gave FPC on the application for this Account. You agree that, for the purposes of this Agreement, you will be deemed to "reside" in the state of your billing address as shown on FPC's records. You consent and agree that your telephone conversations with FPC may be recorded to further improve FPC's customer service. You agree that FPC may place phone calls to you using an automatic dialing announcing device and that such calls are not "unsolicited" under state or federal law. If more than one person or entity signed the application, each is jointly and severally responsible for all obligations, and amounts due, under this agreement. This agreement is not binding on FPC until FPC has approved your credit and given you notice of approval.

**ACCOUNT TYPE.** If your Farm Plan Account arose through FPC's purchase of your existing account balance with a merchant, or at the request of one or more merchants, your Account may be classified as a *Merchant Authorized Account*. Certain special features or promotions that FPC may offer from time to time may be made available only to Preferred Accounts. Merchant Authorized Accounts are useable only at a merchant who asked FPC to finance your purchases from them. FPC may, in its sole discretion, classify your account as a Preferred Account. When

FPC opens your Account, and on each monthly statement, FPC will indicate whether your Account is either a Preferred or Merchant Authorized Account.

**ACCOUNT USE.** By applying for or accepting a Farm Plan *Agricultural, Commercial or Governmental Account*, you agree to use your Account *primarily* to make purchases for agricultural, commercial or governmental use, and *not* for personal, family or household use. You agree to pay FPC all amounts charged by the use of the Account, plus Finance Charges, and the other charges described below, as provided in this Agreement.

You agree that FPC is not responsible for the refusal of anyone to allow a purchase to be made through your Farm Plan Account.

**CREDIT LIMITS.** FPC will establish and advise you of your credit limit(s) when FPC opens your Account and on each monthly statement. FPC may, in FPC's sole discretion, establish and advise you of a special terms credit limit. FPC may also, in its sole discretion, establish separate additional credit limits with special conditions. The special conditions of any special terms or additional credit limit will be disclosed to you when FPC opens your Account, by a merchant at the time of purchase or on your monthly statement. Your use of any such special terms or additional credit limit(s) shall constitute your agreement to any disclosed special conditions.

You agree that FPC may increase or decrease your credit limit(s) at any time, in FPC's sole discretion, without prior notice to you.

You agree to promptly prepare and provide to FPC any financial and Account information that FPC may, in its sole discretion, request from you.

**MONTHLY STATEMENT.** FPC will send you a monthly statement whenever there is activity on your Account, unless the only activity is a payment in full. Your monthly statement will show your New Balance, any Finance Charge, any Late Fees, the Minimum Required Payment and the Payment Due Date. In addition, it will show your Credit Limit(s), an itemized list of current Purchases, Payments, and Credits, as well as other information concerning your Account. FPC will send your monthly statements on dates and in intervals determined by FPC. Such statement shall be deemed correct and accepted by you unless FPC is notified to the contrary in writing within 60 days of the date of that statement. If you think your monthly statement is incorrect, write to FPC on a separate sheet at the address shown on the back of your billing statement. Describe the error as best you can and include your Account number in all correspondence.

**PAYMENT.** The Payment Due Date is the date the payment must be received at the address shown on the front of your monthly statement. You may at any time pay your entire New Balance or pay more than the Minimum Required Payment, and you may avoid or reduce Finance Charges by doing so. However, payment of more than the Minimum Required Payment, while reducing your balance will not prepay your Account or be applied against future Minimum Required Payments. If your Payment Due Date falls on a Saturday, Sunday or holiday, the Payment Due Date will not be extended. All payments must be in U.S. dollars and drawn on funds on deposit in the United States. Payments must be sent to

Farm Plan, at the address designated on your monthly payment stub or to any other payment address FPC later designates on your monthly statement payment stub.

**FINANCE CHARGE RATES.** Finance Charges on your Farm Plan Account may be calculated using variable rates that will be determined by reference to a "Base Rate". The Base Rate from which your variable rates will be determined is the annual percentage rate of interest announced publicly from time to time by Citibank, N.A. in New York, New York as the base rate it uses for interest rate determinations, which was in effect at the close of business on the fifteenth (15th) calendar day of each month, or the next succeeding business day if the fifteenth is not a business day ("Reference Day").

Finance Charges on your Account will be calculated by adding a "Spread" to the Base Rate to arrive at the current rate. The Spreads added to the Base Rate to determine the ANNUAL PERCENTAGE RATES (APRs) that will apply to your Account will be:

|  | Preferred | Merchant Authorized |
|---|---|---|
| Spreads | 8.9% | 10.9% |

Rate increases and decreases, that result from changes in the Base Rate will take effect on the first day of your first billing cycle commencing after the Reference Day on which Base Rate changes.

Changes in your variable rates will apply to your existing balance as well as to future purchases under your Account. An increase in your rate will increase the total Finance Charge accruing on your Account and the balance on which your Minimum Required Payment is calculated.

Currently effective rates are shown below:

|  | Daily Periodic Rate(s) | | Annual Percentage Rate(s) | |
|---|---|---|---|---|
|  | Preferred Regular Purchases | Merchant Authorized Purchases | Preferred Regular Purchases | Merchant Authorized Purchases |
| Rate: | 0.040137% | 0.045816% | 14.65% | 16.65% |

The above rates are correct as of the date of printing, 05/01/2005, but are subject to change after that date.

**FINANCE CHARGE CALCULATION.** FINANCE CHARGES will accrue on your Account Balance as follows:

FPC will add a FINANCE CHARGE, calculated as shown below, if your New Balance is not paid in full on or before the Payment Due Date. To avoid additional Finance Charges on purchases, you must pay the New Balance in full on or before the Payment Due Date.

The amount of your FINANCE CHARGES will be determined as follows:

FPC uses the daily periodic rates and corresponding APRs shown in this Agreement. The applicable periodic rate is applied to the "Average Daily Balance" of your purchases, including current transactions, during the current billing cycle.

To get the "Average Daily Balance", FPC takes the beginning balance of your purchases each day, starting with any Previous

Balance outstanding on the first day of the monthly billing cycle, adds new purchases and debits, and subtracts payments or credits. This determines the daily balance. Unless FPC elects to use a later date, purchases are added to the daily balance as of the date of purchase.

FPC totals the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives FPC the "Average Daily Balance" which is shown on your monthly statement. Finance Charges may accrue on Special Promotions Transactions at a different rate, as explained in the Special Promotions section of this Agreement.

**DEFAULT FINANCE CHARGE RATE.** If you are in default, you may no longer qualify for any reduced interest rate Special Promotions and you agree that, at FPC's option, the APR applicable to any outstanding reduced interest rate Special Promotion(s), may be increased to the APR described in this agreement.

A **MINIMUM FINANCE CHARGE** of One Dollar will be made when the result of the application of the periodic rate(s) to the "Average Daily Balance" is less than One Dollar.

**MINIMUM REQUIRED PAYMENT.** Except as provided below, you agree to pay each month a combined Minimum Required Payment equal to:

1. Any late payment fee due; plus
2. Any additional fees due; plus
3. Any amount past due; plus
4. For Purchases on your Account:
   (a) Either the greater of: $25, or 10% of your New Balance (less any Conversion Balance {balances transferred to Farm Plan from a merchant's accounts receivable} and less any Special Promotions Transaction(s) balances on which no payment is due) if it exceeds $25;
   (b) Or your entire New Balance (less any Conversion Balance and Special Promotions Transaction(s) balances on which no payment is due), if it is less than $25.
5. The amount of any Special Promotions Transaction that is due;
6. For Conversion Balances:
   (a) Either the greater of: $25, or 10% of your Conversion Balance, if that balance exceeds $25;
   (b) Or your entire Conversion Balance, if it is less than $25.

**DUE-IN-FULL PROVISION FOR GOVERNMENTAL ACCOUNTS.** If you are a local, state or federal government agency or department, you agree to pay the entire balance of your account on the date shown on your monthly statement.

**SPECIAL PROMOTIONS.** For some transactions, special promotional financing terms, such as extended free periods, incentive interest rates on certain purchases or for limited time periods or other promotions may be available, at the discretion of FPC. These special terms will be disclosed by the merchant at the time of purchase. Purchases you make during these special promotions will be separately identified on your monthly statement

and will become part of the balance on which your FINANCE
CHARGE and Minimum Requirement Payment are calculated at
the time provided in the special promotions terms disclosure. These
transactions include:

NO-PAYMENTS/NO-INTEREST TRANSACTIONS. Unless
otherwise disclosed, minimum monthly payments will be
deferred and Finance Charge will not accrue during any
disclosed No-Payments/No-Interest period described. Finance
Charges will accrue at the APR applicable to your Account after
the due date of your No-Payments/No-Interest transaction,
unless otherwise disclosed.

SEASONAL TERMS TRANSACTIONS. Unless otherwise
disclosed, Finance Charge will accrue from the date of purchase,
which may be prior to your receipt of the merchandise, and
throughout any special terms period. A special terms transaction
may include that no payment on that transaction will be due
until the end of the special terms period, which will be disclosed
to you. Otherwise, payment will be due as described in this
Agreement. Accrued Finance Charge must still be paid by you if
the entire special terms balance is paid in full by the end of the
special terms period. A reduced special terms finance charge rate
may apply to the transaction, which will be disclosed to you.
Otherwise, the finance charge rate will be the APR applicable
to your Account. The entire balance of the special terms
transaction, plus any accrued finance charge, will be due in full
by the disclosed due date.

SAME AS CASH TRANSACTIONS. Unless otherwise
disclosed, minimum monthly payments will be deferred and
Finance Charge will accrue during any Same As Cash period.
No Finance Charge will be due until the end of the Same As
Cash period and any accrued Finance Charge will be waived if
the entire Same As Cash balance is paid in full by the end of this
Same As Cash period.

OTHER FEES and CHARGES.

LATE PAYMENT FEES. If within 20 days after the Payment Due
Date, FPC has not received payment of at least the current portion
of your Minimum Required Payment (Minimum Required Payment
plus unpaid late payment fees and past due amounts), FPC will add
to your Account a late payment fee of $25.

RETURNED PAYMENT FEE. If you send FPC a check or
electronic payment authorization that is dishonored upon first
presentment, FPC will add to your Account a fee of $35.

COLLECTION COSTS. Upon default, if FPC elects to refer
collection of your Account balance to an attorney, you will pay
the attorney's fees plus court costs and related fees, including any
bankruptcy fees and costs.

CREDIT BALANCES: Any credit balance in excess of $5 on your
account will be refunded within 30 business days from FPC's
receipt of your written request. Otherwise, FPC will refund to you
any credit balance remaining on your account after six months.
You agree that FPC may retain any credit balance if it is less than
$5 or if FPC does not know your address and it cannot be traced
through the last address or telephone number provided to FPC.

**ACCEPTING PAYMENT.** You agree that FPC can accept late or partial payments, as well as payments marked "paid in full" or with other restrictive endorsements, without losing any of its rights under this Agreement.

**DISCLOSURE OF FINANCIAL INFORMATION.** You agree that FPC may report your performance under this Agreement to credit reporting agencies and others who request a credit reference from FPC. You agree that FPC may ask credit reporting agencies or others you list as a credit reference for consumer reports or information regarding your credit history at any time for all legitimate purposes, including credit decisions and the review and collection of your account. You authorize FPC to share information regarding your Account with its corporate affiliates and other companies that offer products and services FPC believes may be of interest to you. FPC's affiliates may use certain consumer report information as a factor in establishing your eligibility for consumer credit. If you object to this, you must notify FPC by calling Farm Plan Customer Service at 1-800-356-9033, and providing your name, Social Security number, address and account number; and certain information will not be provided to those affiliates.

**CLOSING YOUR ACCOUNT.** You may close your Account at any time by notifying FPC in writing. You agree that FPC may close or suspend your Account to future purchases at any time without prior notice. You agree that FPC may close or suspend your Account to future purchases if your Account has no activity for 12 or more months. You agree that, regardless of the closing or suspension of your Account, you remain responsible for paying the amount you owe FPC according to the terms of this Agreement.

**SECURITY INTEREST.** You grant FPC a purchase money security interest in all merchandise purchased through your Account, and its proceeds, including insurance proceeds, but this provision does not apply if you reside in NC and the APR on a purchase or transaction exceeds 15%. FPC's security interest continues until such merchandise is paid for in full by application of your payments in the manner described in this Agreement.

**PAYMENT APPLICATION.** You agree that your payments will be applied as FPC determines in its sole discretion. You agree that FPC has this discretion and that FPC may exercise it to suit its own convenience and interests, without further notice to you. You also agree that FPC may change how it applies payments at any time without notice to you. You acknowledge that the exercise of this discretion by FPC may result in cases in which the application of your payments to the Account creates higher Finance Charges then other payment application methods and that this may include payments allocated to balances with lower APRs before balances with higher APRs and/or to balances with longer promotional periods before balances with shorter or no promotional periods. You agree that your payments will be credited as of the date of receipt at the address on the payment stub of your Monthly Statement if received by 11:00 a.m. Central Time Monday through Friday (otherwise next business day); but if payment is not accompanied by the payment stub or not received at that location, credit may be delayed up to five days.

MERCHANT CHARGEBACKS. FPC may charge back to a merchant who sold goods or services to you on your Account, any part of your Account balance related to those purchases. In that event, this Agreement will be deemed assigned to the merchant to the extent of the chargeback. You agree to such an assignment and further agree to pay the merchant the amount of such chargeback in accordance with the terms of this Agreement.

DEFAULT. You agree that you will be in default if: (a) you fail to pay the Minimum Required Payment within 20 days after the Payment Due Date; (b) the value of FPC's security interest in any collateral is materially impaired; (c) your ability to repay is materially reduced by your exceeding your credit limit, by a change in your employment, by a change in your other obligations, by bankruptcy or insolvency proceedings involving you, or (for community property state residents only) by a change in your marital status or domicile; (d) you die or become incompetent; (e) you have provided FPC false or misleading information relating to your credit application or Account; (f) you fail to perform any other of your obligations under the terms of this Agreement as it may be amended; or (g) you are in default under any other agreement you have with FPC or any of its affiliates.

You agree that, upon your default, FPC may close your Account to future purchases and that FPC may demand immediate payment of your entire Account balance, after giving you any notice and opportunity to cure the default required by applicable law. In addition, you agree that FPC shall have all the rights of a secured creditor under the Uniform Commercial Code and other applicable law.

DELAY IN ENFORCEMENT. You agree that FPC can delay enforcing its rights under this Agreement without losing them.

ELECTRONIC DISCLOSURE. You agree that any notices and disclosures related to your account can be delivered to you in printed form or by electronic means if you provided an electronic mail address to FPC when you applied for this Account or at a later date. Until FPC receives notice of a new electronic mail address, FPC may continue to send such notices and disclosures to the electronic mail address you most recently provided to FPC.

GOVERNING LAW. This Agreement must be approved, and all charges and payments to your Account processed by FPC at its office in Madison, Wisconsin. Therefore, this Agreement and your account will be governed by the substantive law of the United States and to the extent state law applies to this Agreement the substantive law of the State of Wisconsin, regardless of whether or not you reside in Wisconsin. The law of your state of residence will apply to FPC's recovery of any collateral located there.

This is the entire Agreement between you and FPC relating to your Farm Plan Account and no oral changes can be made.

Invalidity of any provision of this Agreement shall not affect the validity and enforceability of the remainder of its terms.

CHANGING THIS AGREEMENT. IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT. You agree that FPC may change this Agreement, including the Finance Charge Calculation and the APR, at any time, by providing prior notice to you. To the extent that the law permits and FPC indicates in the notice, the changes will apply to your existing Account balance as well as to future transactions.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, you will be asked for your name, address, date of birth, and other information that will allow FPC to identify you. You may also be asked to show your driver's license or other identifying documents.

CR3910110 Litho in U.S.A. (06-06)

⌂ Equal Opportunity Lender

Farm Plan™ is a service of FPC Financial, f.s.b.

# JOHN DEERE FINANCIAL

**MULTI-USE ACCOUNT AGRICULTURAL, COMMERCIAL & GOVERNMENTAL APPLICATION**
When your application is completed your John Deere Financial Merchant can fax it to 1-800-732-0251

## PLEASE TELL US ABOUT YOUR BUSINESS.

Your Business Structure: **LLC**

Your Primary Use:  [X] Agricultural   [ ] Commercial (Non-Ag)   [ ] Governmental   [ ] Other

*Organization Legal Name: **J. OLLIS FARMS LLC**

(Or) *Individual's Legal First Name: **JAMES**   Middle Initial: **E**

*Last Name: **OLLIS**   Suffix:   *Date of Birth:

*Social Security #: **8449**   *Tax ID #: **2779**

Applicant's Phone #:   Alternate Phone #:

*Physical Street Address: **2450 Graden Rd**

*City: **WARR SHOALS**   *State **SC**   *ZIP **29692**

County: **Laurens**   Mailing or P.O. Box # (if different than Physical Street Address):

## PRIMARY OWNER INFORMATION REQUIRED FOR PARTNERSHIPS, LLCS AND CORPORATIONS

*First Name: **JAMES**   Middle Initial: **E**   *Last Name: **OLLIS**

*Physical Street Address: **2450 GRADEN RD**

*City: **WARR SHOALS**   *State **SC**   *ZIP **29692**

*Social Security #: **8449**   *Date of Birth:

## CO-APPLICANT/SPOUSE INFORMATION

*First Name:   Middle Initial:   *Last Name:

*Physical Street Address:

*City:   *State   *ZIP

*Social Security #:   *Date of Birth:

## APPLICANT FINANCIAL INFORMATION

Assets: **See Attached**   Liabilities:   Net Worth (assets - liabilities):

Gross Sales:   Net Business Income:   Years in Business:

Primary Financial Institution:   City:   State:

Phone Number:   Primary Operating Lender:

Contact Name:   Phone Number:

Notice to Applicant or Representatives of Applicant(s): (1) You represent that the information given in the entire application, including all applicant names and any other information provided on any attached page(s) is complete and accurate, is provided for the purpose of obtaining credit in an amount set by the credit policies and practices of John Deere Financial, f.s.b. ("JDF"), and authorize JDF to check with reporting agencies, credit references, and other sources disclosed herein in investigating the information given. (2) You also grant JDF permission to obtain a credit report on you for any legitimate purposes in connection with this transaction. Such purposes include assisting in making a credit decision, reviewing your account, and assisting in taking collection activity. (3) Married applicants may apply for an individual account. (4) You understand that any decision to grant or deny revolving credit will be made by JDF in Wisconsin. You understand this account is for agricultural, commercial, governmental use only. You further certify that you are authorized to sign on behalf of the applicant. (5) You agree that any notices and disclosures can, at the option of JDF, be provided electronically to the last Internet address that you provided to JDF. (6) You also authorize JDF to disclose financial information about you as described in the credit agreement and future notices JDF may send you. (7) You hereby give all lenders authorization to provide a copy of your financial statements, including but not limited to your balance sheet, cash flow statement, and income statement to JDF. You have received a true copy of this agreement and agree to its terms.

SIGN HERE

X _____   Title _**president**_   Date _**12/11/15**_
Applicant's Signature (required)

X _____, Individually   Print Name _**James Ollis**_   Date _**12/11/15**_
Primary Owner Signature Individually - Required for Corporation, LLC & Partnership in addition to the signature on behalf of the Organizational Applicant above (by signing, such Primary Owner shall be personally liable for all transactions and obligations arising under any John Deere Financial account that may be approved by JDF pursuant to this Application).

X _____   Print Name _____   Date _____
Co-Applicant's Signature

July 2012

**For a credit limit up to $50,000 - YOU CAN STOP HERE**

## FOR MERCHANT USE ONLY:

Merchant Name:   Contact Name:   Phone Number:

Merchant Number:   Customer Account Number:   Patron Number:

*John Deere Financial reserves the right to request additional information if needed.

(R3910260 Litho in U.S.A. (12-07)

# EXHIBIT D

**Fill in this information to identify the case:**

Debtor 1    James Edwin Ollis

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   District of South Carolina

Case number   18-04549-hb

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

John Deere Financial, F.S.B.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Reid E. Dyer
Name

78 Wentworth Street
Number          Street

Charleston          SC          29401
City          State          ZIP Code

Contact phone   843-579-7000

Contact email   reiddyer@mvalaw.com

Where should payments to the creditor be sent? (if different)

Name

Number          Street

City          State          ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

6. **Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  9  7  0  2

7. **How much is the claim?**    $_____41,644.69  **Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

money loaned

9. **Is all or part of the claim secured?**
☐ No
☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☑ Other. Describe:    cross-collateralized by security for accts. -3900 and -3077

**Basis for perfection:**    UCC financing statements
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $    31,808.00
**Amount of the claim that is secured:**    $    7,708.70
**Amount of the claim that is unsecured:**    $    33,935.99  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed) 11.90 %
☐ Fixed
☑ Variable

10. **Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

☐ Yes. *Check one:*

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.    $_____

**Amount entitled to priority**

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  11/13/2018
                  MM / DD / YYYY

/s/ Reid E. Dyer
Signature

**Print the name of the person who is completing and signing this claim:**

Name  Reid E. Dyer
First name    Middle name    Last name

Title  Attorney

Company  Moore & Van Allen, PLLC
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  78 Wentworth Street
Number    Street
Charleston    SC    29401
City    State    ZIP Code

Contact phone  843-579-7000    Email  reiddyer@mvalaw.com

```
R136-1                      RECOVERY MANAGEMENT SYSTEM           13:18:17    08/24/18
ACTIVE                                                                      Page 4 of 8
Acct...:        9702                                 Birthdate.:
Tax No.:        8449          Comaker Count: 00      Status....:  G01
Name...:  OLLIS,JAMES E                              Loan Type.:  2001
Address:  2450 GRADEN RD                             Recoverer.:  AC57
Address:                                             Lst Pmt Dt:  04/13/18
City...:  WARE SHOALS          State: SC             Lst Paymnt:        0.00
Ph(Ho).:  8648614124           Zip..:  29692         Commiss..%:         .00
Ph(Off):  0000000000           Cnty.:                Interest %:       11.90
   Date   Code  Description                 Posted Amount           Balance
09/21/18  01008 INT RATE CHG CALC                   13.57          41,644.69
09/21/18  10008 CHARGED OFF PRINCIPA             41,631.12         41,631.12
          **     END OF TRANSACTIONS
```

PF Keys:   3=Prev                    7=Back   8=Fwd

any other agreement you have with us or any of our affiliates.

Upon your default, we may close your Account to future purchases and we may demand immediate payment of your entire Account balance, after giving you any notice and opportunity to cure the default required by applicable law. In addition, we shall have all the rights of a secured creditor under the Uniform Commercial Code and other applicable law.

**DELAY IN ENFORCEMENT.** We can delay enforcing our rights under this Agreement without losing them.

**ELECTRONIC DISCLOSURE.** You agree that any notices and disclosures related to your account can be delivered to you in printed form or by electronic means if you provided an electronic mail address to us when you applied for this Account or at a later date. Until we receive notice of a new electronic mail address, we may continue to send such notices and disclosures to the electronic mail address you most recently provided to us.

**GOVERNING LAW.** This Agreement must be approved, and all charges and payments to your Account processed by us at our office in Madison, Wisconsin. Therefore, this Agreement and your account will be governed by the substantive law of the United States and to the extent state law applies to this Agreement the substantive law of the State of Wisconsin, regardless of whether or not you reside in Wisconsin. The law of your state of residence will apply to our recovery of any collateral located there.

This is the entire Agreement between you and us and no oral changes can be made.

Invalidity of any provision of this Agreement shall not affect the validity and enforceability of the remainder of its terms.

**CHANGING THIS AGREEMENT.** We may change this Agreement, including the Finance Charge Calculation and the Annual Percentage Rate, at any time. If we do, we will provide you the prior notice required by law. To the extent that the law permits and we indicate in our notice, the changes will apply to your existing Account balance as well as to future transactions.

# Farm Plan®

## Credit Agreement

AGRICULTURAL, COMMERCIAL
AND GOVERNMENTAL USE ACCOUNT

*April 2002*



*The Charge Account for Rural America™*

OCC8581 Litho in U.S.A. (02-04)

## FARM PLAN® AGRICULTURAL/COMMERCIAL OR GOVERNMENTAL USE CREDIT AGREEMENT

**THIS IS YOUR AGREEMENT. PLEASE READ IT AND KEEP IT FOR YOUR RECORDS.**

**TERMINOLOGY.** In this Agreement the words *you, your,* and *yours* mean each person and/or business entity who applies for is granted a Farm Plan Account, as well as any person permitted to use the Account. The words *we, us,* and *our* mean FPC Financial, f.s.b., or any subsequent holder of the Account or any balances arising under the Account.

**FARM PLAN ACCOUNT.** You request a Farm Plan Account from us, and further authorize us to issue a Farm Plan Account card to each merchant from whom you may make a purchase. By applying for a Preferred Account, or by using a Merchant Authorized Account to make a purchase from a merchant who requests us to open one for you, you agree that this Credit Agreement will apply to all purchases made through your Farm Plan Account by you or any person you authorize. You authorize us to honor any purchases you make by mail or telephone, facsimile transmission (fax) or other electronic means on our Account. You agree that a signature is not necessary as identification in such cases. You agree that any authorized use of your Account constitutes your acceptance of all the terms and conditions of this Agreement, as it may be amended from time to time. If you submit your application to us by facsimile transmission (fax) or other electronic means, you agree that the application will have the same effect as a signed original. You will promptly notify us of any suspected loss, theft, or unauthorized use of the Account. If that notice is given orally, you will confirm it in writing. You may be liable for the unauthorized use of your Farm Plan Account before you notify us orally or in writing at Farm Plan, P.O. Box 5328, Madison, Wisconsin 53705-0328 of the unauthorized use. In any case, your liability will not exceed $50. You agree to give us prompt notice of any change in your name, mailing address, or place of employment. Until we receive notice of your new address, we may continue to send statements and other notices to the address you gave us on the application for this Account. For the purposes of this Agreement, you will be deemed to "reside" in the state of your billing address as shown on our records. You consent and agree that your telephone conversations with us may be recorded to further improve our customer service. You agree that we may place phone calls to you using an automatic dialing-announcing device and that such calls are not "unsolicited" under state or federal law. If more than one person or entity signed the application, each is jointly and severally responsible for all obligations, and amounts due, under this agreement. This agreement is not binding on us until we have approved your credit and given you notice of approval.

**ACCOUNT TYPE.** If your Farm Plan Account arose through our purchase of your existing account balance with a merchant, or at the request of one or more merchants, without your submission and our approval of a Credit Application, your Account will be classified as a *Merchant Authorized Account.* If your Account resulted from our approval of your completed Credit Application for either: 1) a new Account or for 2) the conversion of your Merchant Authorized Account, your Account will be classified as a *Preferred Account.* Certain special features or promotions we may offer from time to time may be made available only to Preferred Accounts. When we open your Account, and on each monthly statement, we will indicate whether your Account is either a Preferred or Merchant Authorized Account.

**ACCOUNT USE.** By applying for or accepting a Farm Plan *Agricultural, Commercial or Governmental Account,* you agree to use your Account *primarily* to make purchases for agricultural, commercial or governmental use, and not for personal, family or household use. (For personal, family or household use, we also offer Farm Plan Consumer Accounts with different credit limits, rates and repayment terms. Please write to us at the above address if you would like to apply for one.)

You can make purchases up to the full amount of your Regular Credit Limit, and you agree to pay us all amounts charged by the use of the Account, plus Finance Charges, and the other charges described below, as provided in this Agreement.

*Conversion Balances.* Conversions are the balances transferred from the Merchants accounts receivable. These balances remain the liability of the Merchants.

We are not responsible for the refusal of anyone to allow a purchase to be made through your Farm Plan Account.

**CREDIT LIMITS.** We will establish and advise you of your credit limit. You may request a change to your credit limit by writing us at the above address. If you have a Merchant Authorized Account, it is useable only at the merchant(s) who requested us to finance your purchases from them. The following credit limit may be established for your Account.

*Regular Credit Limit:* Purchases made within your Regular Credit Limit are posted to your Account and can be repaid in monthly installments, subject to the Finance Charge and Minimum Required Payment terms below.

We may increase or decrease the credit limit at any time, in our sole discretion, without prior notice to you.

**MONTHLY STATEMENT.** We will send you a monthly statement whenever there is activity on your Account, unless the only activity is a payment in full. Your monthly statement will show your New Balance, any Finance Charge, any Late Fees, the Minimum Required Payment and the Payment Due Date. In addition, it will show your Regular Credit Limit, an itemized list of current Purchases, Payments, and Credits, as well as other information concerning your Account.

We will send your monthly statements on dates and in intervals determined by us. Such statement shall be deemed correct and accepted by you unless you are notified to the contrary in writing within 60 days of our mailing of that statement. If you think your monthly statement is incorrect, write us on a separate sheet at the address shown on the back of your billing statement no later than 60 days after we sent you the first statement on which the error or problem appeared. Describe the error as best you can and include your Account number in all correspondence.

**PAYMENT.** The Payment Due Date is the date the payment is due at the address shown on the front of your monthly statement. You may at any time pay your entire New Balance or pay more than the Minimum Required Payment, and you will avoid or reduce Finance Charges by doing so. However, payment of more than the Minimum Required Payment, while reducing your balance, will not prepay or be applied against future Minimum Required Payments. If your Payment Due Date falls on a Saturday, Sunday or holiday, the Payment Due Date will not be extended. All payments must be in U.S. dollars and drawn on funds on deposit in the United States. Payments should be sent to Farm Plan, Department 77175, PO Box 77000, Detroit, MI 48277-0175 or to any other payment address we later designate on your monthly statement payment stub.

**FINANCE CHARGE RATES.** Finance Charges on your Farm Plan Account will be calculated using **variable rates** that will be determined by reference to a "Base Rate" to which is added a "Spread" to arrive at the current rate. The same **Advantage Spread** will be used for purchase(s) within your Regular Credit Limit.

The Base Rate from which your variable rates will be determined is the annual percentage rate of interest announced publicly from time to time by Citibank, N.A. in New York, New York as the base rate it uses for interest rate determinations, which was in effect at the close of business on the fifteenth (15th) calendar day of each month, or the next succeeding business day if the fifteenth is not a business day ("Reference Day"). The Advantage Spreads added to the **Base Rate** to determine the **ANNUAL PERCENTAGE RATES** that will apply to your Purchase balances will be:

Advantage Spread

| Preferred | Merchant Authorized |
|-----------|---------------------|
| 8.9% | 10.9% |

Rate increases and decreases, that result from changes in the Base Rate will take effect on the first day of your first billing cycle commencing after the Reference Day on which Base changes.

Changes in your variable rates will apply to your existing Account Balance as well as to future purchases. An increase in your rate will increase the total Finance Charge accruing on your Account and the balance on which your Minimum Required Payment is calculated.

Currently effective rates are shown below:

| | Daily Periodic Rate(s) | | Annual Percentage Rate(s) | |
|---|---|---|---|---|
| | Preferred Regular Purchases | Merchant Authorized Purchases | Preferred Regular Purchases | Merchant Authorized Purchases |
| Advantage Rate. | .037397% | .042877% | 13.65% | 15.65 |

The above rates are correct as of the date of printing, 4/02/02 but are subject to change after that date.

**FINANCE CHARGE CALCULATION. FINANCE CHARGES** will accrue on your Account Balance as follows:

On purchases we will add a FINANCE CHARGE, calculated as shown below, if your New Balance, is not paid in full on or before the Payment Due Date. To avoid additional Finance Charges on purchases, you must pay the New Balance in full on or before the Payment Due Date.

The amount of your **FINANCE CHARGES** will be determined as follows:

We use the daily periodic rates and corresponding ANNUAL PERCENTAGE RATES shown in this Agreement. The applicable periodic rate is applied to the "Average Daily Balance" of your purchases, including current transactions, during the current billing cycle.

To get the "Average Daily Balance," we take the beginning balance of your purchases each day, starting with any Previous Balance outstanding on the first day of the monthly billing cycle, add new purchases and debits and subtract payments or credits. This determines the daily balance. Unless we elect to use a later date, purchases are added to the daily balance as of the date of purchase.

We total the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us each "Average Daily Balance" which is shown on your monthly statement.

**DEFAULT FINANCE CHARGE RATE.** If you are in default, you may no longer qualify for any reduced interest rate special promotions and, at our option, the ANNUAL PERCENTAGE RATE applicable to any outstanding reduced interest rate special promotion(s), may be increased to the ANNUAL PERCENTAGE RATE described in this agreement.

A **MINIMUM FINANCE CHARGE** of 50 cents will be made when the result of the application of the periodic rate(s) to the "Average Daily Balance" is less than 50 cents.

**MINIMUM REQUIRED PAYMENT.** Except as provided below, you agree to pay each month a combined Minimum Required Payment equal to:

1. Any late payment fee due; plus
2. Any additional fees due; plus
3. Any amount past due; plus
4. For Purchases:
   (a) Either the greater of: $25, or 10% of your New Balance (less any Conversion Balance) if it exceeds $25;
   (b) *Or* your entire New Balance (less any Conversion Balance), if it is less than $25.
5. For Conversion Balances:
   (a) Either the greater of: $25, or 10% of your Conversion Balance, if that balance exceeds $25;
   (b) *Or* your entire Conversion Balance, if it is less than $25.

**DUE-IN-FULL PROVISION FOR GOVERNMENTAL ACCOUNTS.** If you are a local, state or federal government agency or department, you agree to pay the entire balance of your account on the date shown on your monthly statement.

**SPECIAL PROMOTIONS.** From time to time special financing terms, such as extended free periods, incentive interest rates on certain purchases or for limited time periods or other promotions may be available for the purchase of certain items from participating merchants. These special terms will be disclosed by the merchant at the time of purchase. Purchases you make during these special promotions will be separately identified on your monthly statement and will become part of the balance on which your FINANCE CHARGE and Minimum Requirement Payment are calculated at the time provided in the special terms disclosure.

NO PAYMENTS/NO INTEREST TRANSACTIONS. Unless otherwise disclosed, minimum monthly payments will be deferred and Finance Charge will not accrue during any No Payments/No Interest period described on your monthly statement. No Finance Charge will be due until the end of the No Payments/No Interest period.

SEASONAL TERMS TRANSACTIONS. Unless otherwise disclosed, Finance Charge will accrue from the date of purchase, which may be prior to your receipt of the merchandise, and throughout any seasonal terms period described on your monthly statement. No Finance Charge or payment will be due until the end of the seasonal terms period. Accrued Finance Charge must still be paid by you if the entire seasonal terms balance is paid in full by the end of this seasonal terms period. A special seasonal terms finance charge rate may apply to the transaction, which will be disclosed to you. The entire balance of the seasonal terms transaction, plus any accrued finance charge, will be due in full at the end of the seasonal terms period.

SAME AS CASH TRANSACTIONS. Unless otherwise disclosed, minimum monthly payments will be deferred and Finance Charge will accrue during any same as cash period described on your monthly statement. No Finance Charge will be due until the end of the same as cash period and any accrued Finance Charge will be waived if the entire same as cash balance is paid in full by the end of this same as cash period.

OTHER FEES and CHARGES.
LATE PAYMENT FEES. If within 20 days after the Payment Due Date we have not received payment of at least the current portion of your Minimum Required Payment (Minimum Required Payment plus unpaid late payment fees and past due amounts), we will add to your Account a late payment fee of $15.

RETURNED PAYMENT FEE. If you send us a check that is dishonored, we will add to your Account a fee of $20.

COLLECTION COSTS. If we have to refer collection of your Account balance to an attorney, you will pay the attorney's fees plus court costs and related fees including any bankruptcy fees and costs.

SERVICE FEES. We will add to your Account a reasonable charge for photocopies and reprints of Account and transaction documents which you may request and for other special services. We may assess a charge not to exceed $20 per hour, or for any portion thereof, for research performed on your account per your request, whether performed by us or our service provider. Any such charges will be subject to a Finance Charge in the same manner as purchases are treated.

CREDIT BALANCES. Any credit balance in excess of $5 on your account will be refunded within 30 business days from our receipt of your written request. Otherwise, we will refund to you any credit balance remaining on your account after six months. We will retain any credit balance if it is less than $5 or if we do not know your address and it cannot be traced through the last address or telephone number provided to us.

OTHER SERVICES. Third parties may offer additional features, services and enhancements related to the Account. You acknowledge that we are not liable for those and that they are the sole responsibility of those third parties. If you receive insurance services, you understand that you will receive all the information on those services from the insurer. That insurance may be cancelled if you are in default under this Agreement.

ACCEPTING PAYMENT. We can accept late or partial payments, as well as payments marked "paid in full" or with other restrictive

endorsements, without losing any of our rights under this Agreement.

DISCLOSURE OF FINANCIAL INFORMATION. We may report your performance under this Agreement to credit reporting agencies and others who request a credit reference from us. We may ask credit reporting agencies or others you list as a credit reference for consumer reports or information regarding your credit history at any time for all legitimate purposes, including credit decisions and the review and collection of your account. You authorize us to share information regarding your Account with our corporate affiliates and other companies that offer products and services we believe may be of interest to you. Our affiliates may use certain consumer report information as a factor in establishing your eligibility for consumer credit. If you object to this, you must notify us by calling Farm Plan Customer Service at 1-800-356-9033, and providing your name, Social Security number, address and account number; and certain information will not be provided to those affiliates.

CLOSING YOUR ACCOUNT. You may close your Account at any time by notifying us in writing. We may close or suspend your Account to future purchases at any time without prior notice. We may close or suspend your Account to future purchases if your Account has no activity for 12 or more months. Regardless of the closing or suspension of your Account, you remain responsible for paying the amount you owe us according to the terms of this Agreement.

SECURITY INTEREST. You grant us a purchase money security interest in all merchandise purchased through your Account, and its proceeds, including insurance proceeds, but this provision does not apply if you reside in NC and the ANNUAL PERCENTAGE RATE on a purchase or transaction exceeds 15%. Our security interest continues until such merchandise is paid for in full by application of your payments in the manner described in this Agreement.

PAYMENT APPLICATION. Your payment will be allocated in a manner we determine in accordance with applicable laws, and may change from time to time. Your monthly payments will be applied first to late fees, next to interest, next to other fees, next to previous balance, then to new purchases.

Payment will be credited as of the date of receipt at the address on the payment stub of your Statement if received by 9:00 a.m. Eastern Time Monday through Friday (otherwise next business day); but if payment is not accompanied by the payment stub or not received at that location, credit may be delayed up to five days.

MERCHANT CHARGEBACKS. We may charge back to a merchant who sold goods or services to you on your Account, any part of your Account balance related to those purchases. In that event, this Agreement will be deemed assigned to the merchant to the extent of the chargeback. You agree to such an assignment and further agree to pay the merchant the amount of such chargeback in accordance with the terms of this Agreement.

DEFAULT. You will be in default if: (a) you fail to pay the Minimum Required Payment within 20 days after the Payment Due Date; (b) the value of our security interest in any collateral is materially impaired; (c) your ability to repay is materially reduced by your exceeding your credit limit, by a change in your employment, by a change in your other obligations, by bankruptcy or insolvency proceedings involving you, or (for community property state residents only) by a change in your marital status or domicile; (d) you die or become incompetent; (e) you have provided us false or misleading information relating to your credit application or Account; (f) you fail to perform any other of your obligations under the terms of this Agreement as it may be amended; or (g) you are in default under