# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 18-04549-HB |
| | Chapter 12 |
| James Edwin Ollis, | **ORDER** |
| Debtor(s). | |

**THIS MATTER** is before the Court for consideration of the Motion for Relief from Stay filed by Creditor Rabo Agrifinance LLC[1] and the objection to the Motion and Objection to Claim filed by Debtor James Edwin Ollis.[2] A continued hearing was held on March 1, 2019. Present at the hearing were Constance Young on behalf of Rabo and Alecia Compton on behalf of Ollis. The Court heard testimony from Ollis, Clark Roach, and Dustin Dyal and received numerous exhibits. After careful consideration of the testimony, documents, arguments of the parties, and applicable law, the Court finds as follows.

## FACTS

1. Ollis is the sole member of J. Ollis Farms, LLC (the "LLC"). Pre-petition farming operations included buying and raising cattle and fatting them to be sold as well as growing hay to feed the cattle.

2. On or about April 21, 2016, Ollis and the LLC executed a note payable to Rabo in the amount of $1,500,000.00 pursuant to a Credit Agreement between the parties in exchange for an operating line of credit.

---

[1] ECF No. 100, filed Dec. 13, 2018.
[2] ECF No. 80, filed Dec. 4, 2018.

3. The note is secured by a Security Agreement between Ollis, the LLC, and Rabo dated April 21, 2016, granting Rabo a security interest in Ollis and the LLC's personal property now owned or hereafter acquired, including:

> (a) all accounts . . . (b) all inventory; (c) all equipment . . . (e) all farm products, including crops grown, growing or to be grown, livestock born or unborn, supplies used or produced in Grantor's farming operation, and products of crops and livestock in their unmanufactured state . . . (j) substitutes or replacements for any Collateral, all proceeds, products, rents and profits of any Collateral . . .

4. On May 2, 2016, Rabo filed a UCC Financing Statement with the South Carolina Secretary of State, listing Ollis and the LLC as the debtors and providing a description of the collateral identical to the Security Agreement.

5. On or about June 2, 2017, the parties entered a First Amendment to Credit Agreement and Other Loan Documents, extending the maturity date of the loan from May 1, 2017, to May 1, 2018.

6. Ollis filed a petition for Chapter 12 relief on September 4, 2018. The LLC has not filed a bankruptcy case.

7. On October 23, 2018, Rabo filed a secured claim in the amount of $1,606,622.61 (the "Claim") based on the Security Agreement and Financing Statement.[3] The Claim attached copies of the note, Credit Agreement, First Amendment to the Credit Agreement, Security Agreement, and Financing Statement. The Claim also included an attachment describing the basis for the Claim and security for the indebtedness as well as an itemization of the total amount.

8. Rabo's Claim asserts its interest is fully secured but did not fill in the blank on the official form for the "value of property" that secures its interest.

---

[3] POC No. 4-1.

2

9. In addition to cattle, Rabo asserts its security interest includes all hay on the farm and all equipment not subject to a purchase money security interest, including: 1992 NH Haybine; 4 Hay Rakes; 2007 John Deere Square Baler; 1995 Stoll flat 30' hay trailer; 1995 Fleetneck 30' 20 ton trailer; 1998 Martin 24' dual tandem; 1995 Stoll 28' cattle trailer; and 1994 30' Barrett aluminum cattle trailer (collectively, the "Equipment").

10. Ollis' Schedule A/B lists the Equipment as owned by Ollis, with a collective value of $33,500.00.[4] In a liquidation analysis filed by Ollis in support of his Chapter 12 plan, he claims the value of the Equipment is $25,575.00.[5] Ollis testified the Equipment is needed for his farming operation and is mainly used for cutting, baling, and raking hay, and moving hay and produce to feed cattle.

11. Ollis' Schedule A/B indicates he does not own any crops for growing or harvesting or any farm supplies or feed, but includes real property owned by Ollis where his farming operations take place and where hay is grown. Ollis' testimony indicated that he owns the hay he grows.

12. A consent order between Rabo and Ollis entered on December 14, 2018, required Ollis to turn over to Rabo all cattle owned by Ollis or the LLC within 14 days from entry of the order and any proceeds from any cattle Ollis may have sold between the original hearing date and the date of entry of the order. Ollis and/or the LLC no longer own the cattle, but no proceeds have been paid to Rabo.

13. Because Ollis no longer owns any cattle, he now intends for his farming operation to consist of consigning cattle that he will feed and keep on his property, raising and selling quail to be used for hunting purposes, and baling and selling hay.

---

[4] ECF No. 37, filed Oct. 29, 2018.
[5] ECF No. 215, filed Feb. 14, 2019.

14. Ollis baled and sold and/or removed from the farm some hay while Rabo's Motion for Relief from Stay was pending.

15. Ollis' Chapter 12 plan proposed monthly payments of $11,886.00 for 50 months beginning January 25, 2019, and $11,330.00 for 10 months beginning March 25, 2023, as well as quarterly payments of $1,765.00 beginning March 25, 2019. Under the proposed plan, Ollis valued Rabo's secured claim at $11,099.37 – the value of the cattle Ollis sold post-petition without Rabo's consent – with the remaining $1,595,523.24 listed unsecured debt. No value was assigned to the Equipment or the hay and no payment proposed on account of any security interest in that alleged collateral.

16. Ollis' monthly reports through January 2019 did not evidence sufficient historical income to fund anticipated expenses plus payments due under the proposed plan, and his testimony indicated that he did not properly and accurately complete all reports.

17. Ollis provided tax returns for 2016 and 2017 but was unable to testify regarding any details for his income for 2018.

18. Ollis' plan has not been confirmed.[6]

## DISCUSSION AND CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (G) and this Court may enter a final order. Rabo seeks relief from the automatic stay as to its interests in any remaining hay on the property and the Equipment listed in the plan as unencumbered. Ollis argues the hay is not a crop subject to Rabo's security interest and Rabo's security interest in the Equipment is not perfected because the Financing Statement does not specifically describe the Equipment,

---

[6] *See* ECF Nos. 251, 253 – 254.

4

including listing serial numbers. Ollis objects to Rabo's Claim because it failed to include a value for the property in which it claims a security interest and, therefore, should be treated as unsecured.

**I. RABO'S SECURITY INTEREST**

A farmer's equipment and crops may serve as collateral in a secured transaction. The South Carolina Uniform Commercial Code defines equipment as "goods other than inventory, farm products, or consumer goods." S.C. Code Ann. § 36-9-102(33). "Farm products" means:

> goods, other than standing timber, with respect to which the debtor is engaged in a farming operation and which are:
> - (A) crops grown, growing, or to be grown, including:
>   - (i) crops produced on trees, vines, and bushes; and
>   - (ii) aquatic goods produced in aquacultural operations;
> - (B) livestock, born or unborn, including aquatic goods produced in aquacultural operations;
> - (C) supplies used or produced in a farming operation; or
> - (D) products of crops or livestock in their unmanufactured states.

S.C. Code Ann. § 9-36-102(34). "'Farming operation' means raising, cultivating, propagating, fattening, grazing, or any other farming, livestock, or aquacultural operation." S.C. Code Ann. § 36-9-102(35). The term "crops" is not defined by the Commercial Code, but elsewhere means "products that are grown, raised, and harvested." *Crops*, Black's Law Dictionary (10th ed. 2014).

An Official Comment to the Uniform Commercial Code provides:

> Crops, livestock, and their products cease to be "farm products" when the debtor ceases to be engaged in farming operations with respect to them. If, for example, they come into the possession of a marketing agency for sale or distribution or of a manufacturer or processor as raw materials, they become inventory. Products of crops or livestock, even though they remain in the possession of a person engaged in farming operations, lose their status as farm products if they are subjected to a manufacturing process. What is and what is not a manufacturing operation is not specified in this Article. At one end of the spectrum, some processes are so closely connected with farming – such as pasteurizing milk or boiling sap to produce maple syrup or sugar – that they would not constitute manufacturing. On the other hand an extensive canning operation would be manufacturing. Once farm products have been subjected to a manufacturing operation, they normally become inventory.

S.C. Code Ann. § 36-9-102, Official Comment 4.

For a security interest to be effective against third parties, it must have attached to the collateral and be perfected. A security interest in farm products and equipment attaches when: (1) the debtor signs a security agreement; (2) the security agreement contains a description of the collateral; (3) value is given; and (4) the debtor has rights in the collateral. S.C. Code Ann. § 36-9-203. A description of the collateral in the security agreement "is sufficient, whether or not it is specific, if it reasonably identifies what is described." S.C. Code Ann. § 36-9-108(a). A description reasonably identifies the collateral if it identifies it by category. *See* S.C. Code Ann. § 36-9-108(b). However, "a description of collateral as 'all the debtor's assets' or 'all the debtor's personal property' or using words of similar import does not reasonably identify the collateral" on a security agreement. S.C. Code Ann. § 36-9-108(c).

Perfection of a security interest in farm products and equipment occurs when the secured party files a financing statement with the Secretary of State's office. S.C. Code § 36-9-310(a). The financing statement is sufficient if it contains the name of the debtor, the name of the secured party, and indicates the collateral covered. S.C. Code Ann. § 36-9-502. Unlike a security agreement, a financing statement adequately indicates the collateral if it provides that it covers all the debtor's assets or personal property. S.C. Code Ann. § 36-9-504.

Ollis asserts the hay is not a crop and, therefore, is not subject to Rabo's security interest. Ollis provided no basis for this argument or any alternatives as to what type of good the hay constitutes. The hay is grown, raised, and harvested by Ollis. He intends for his future farming operation to consist in part of growing, baling, and selling hay. Therefore, the hay appears to be a crop. Nevertheless, the hay is still subject to Rabo's lien as a "farm product" when used to feed Ollis' cattle because it is "supplies used or produced in a farming operation." Further, if harvesting and baling the hay constitutes a manufacturing operation, then the hay transitions to inventory,

which is also covered by Rabo's lien. Thus, regardless of how the hay is used on Ollis' farm – grown, as feed for cattle, or for baling and selling – it is subject to Rabo's lien.

Ollis also asserts Rabo's security interest does not cover the Equipment because no serial numbers are listed in the Financing Statement. As set forth above, when indicating the collateral, financing statements do not need to include specific descriptions or serial numbers of equipment for the security interest to be perfected. S.C. Code Ann. § 36-9-504. The descriptions provided in Rabo's Security Agreement and UCC Financing Statement are sufficient to attach and perfect its lien on the Equipment.

Having found that Rabo has a perfected security interest in the hay and the Equipment, the Court must turn to the merits of the Claim Objection and Motion for Relief from Stay.

### II.  CLAIM OBJECTION

"A proof of claim is the creditor's statement as to the amount and character of the claim." *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004) (citing Fed. R. Bankr. P. 3001(a)). The Federal Rules of Bankruptcy Procedure specify the form, content, and filing requirements for a proof of claim. *See e.g.*, Fed. R. Bankr. P. 3001. "A proof of claim shall conform substantially to the appropriate Official Form. Fed. R. Bankr. P. 3001(a). "A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

> The burden then shifts to the debtor to object to the claim. 11 U.S.C. § 502(b) . . . The debtor must introduce evidence to rebut the claim's presumptive validity. Fed. R. Bankr. P. 9017; Fed. R. Evid. 301; 4 *Collier* at ¶ 501.02[3][d]. If the debtor carries its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence.[2] *Id.* at ¶ 502.02[3][f].

*Harford Sands Inc.*, 372 F.3d at 640. "[A] request to determine the amount of a secured claim may be made by motion, in a claim objection, or in a plan filed in a chapter 12 or chapter 13 case." Fed. R. Bankr. P. 3012(b).

7

Ollis objects to Rabo's Claim asserting the amount of the secured claim should be $0.00 because it failed to include the value of the property that secured its interest on the official form; however, this conflicts with his proposed plan and he has not presented any support for this argument.[7] Although Rabo failed to include this amount, it otherwise complied with the applicable Bankruptcy Rules and conformed substantially to the official form to render its secured claim *prima facie* valid in the amount of $1,606,622.61. *See* Fed. R. Bankr. P. 3001(f). The exact amount of the secured portion of Rabo's claim may have been unknown to Rabo at the time the Claim was filed considering Ollis' activities affecting the value of this collateral. Further, the grounds for Ollis' Objection do not challenge the amount or validity of Rabo's Claim, but rather seek to have its $1,606,622.61 interest treated as entirely unsecured based on a technicality, and the Objection is overruled.

### III.    MOTION FOR RELIEF FROM STAY

Section 362(d)(1) of the Bankruptcy Code provides the Court shall grant relief "for cause, including the lack of adequate protection of an interest in property of such party in interest." Pursuant to § 362(d)(2), such relief shall be granted if it is demonstrated that "the debtor does not have an equity in such property" and "such property is not necessary to an effective reorganization." On a motion for relief from stay, "(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g).

---

[7] The failure to comply with the Bankruptcy Rules when filing a proof of claim may result in sanctions under certain circumstances. *See* Fed. R. Bankr. P. 3001(c)(2)(D) (applying to claims filed in individual debtor cases). That sanction does not arise to the disallowance of the claim, which is limited to the reasons set forth under § 502(b). *See* Fed. R. Bankr. P. 3001, Advisory Committee Notes (2011) ("Failure to provide the required information [under Rule 3011(c)(2)] does not itself constitute a ground for disallowance of a claim."); *see also* 9 *Collier on Bankruptcy* ¶ 3001.01 (16th ed. Rev) ("Notably, those penalties do not provide for automatic disallowance of a proof of claim for failure to attach documents.").

Rabo has established the validity of its lien and the amount of its debt. Rabo's interest is not adequately protected by any equity in the collateral – the amount of its Claim far exceeds the value of the hay and Equipment and the collateral available to secure Rabo's lien has diminished and likely will continue to do so. Ollis sold some of Rabo's collateral pre- and post-petition without Rabo's consent and proceeds were not delivered to Rabo, and it appears from his plan and testimony that Ollis intends to continue to sell and/or use the hay. Rabo is also not adequately protected by ongoing payments or the assurance of future payment. Ollis' projected income, budget, and proposed plan do not indicate sufficient income to make proposed plan payments and he has made no significant offer of adequate protection payments nor provided evidence that there is a reasonable prospect of generating enough income to make adequate protection payments. *See Henderson*, 395 B.R. at 899 ("A creditor may also be adequately protected by periodic payments sufficient to compensate the creditor for the diminution in value of the creditor's collateral."). Therefore, cause exists to lift the stay pursuant to § 362(d)(1).

Relief from stay is also appropriate under § 362(d)(2). Ollis has no equity in the collateral and the evidence does not support a finding that he can continue farming operations, make proposed plan payments, and provide adequate protection to Rabo. Therefore, Rabo has presented sufficient evidence to convince the Court that the property is not necessary to an effective reorganization.

**IT IS, THEREFORE, ORDERED** that Ollis' Objection to Rabo's Claim is overruled and Rabo's Motion for Relief from the Automatic Stay is granted.

**AND IT IS SO ORDERED.**
**FILED BY THE COURT**
**03/21/2019**



US Bankruptcy Judge
District of South Carolina

9

Entered: 03/21/2019